952 F.2d 158
 William Leroy PATCHETTE; Wayne Pickerell; Frank
Longstreet; Don Steel; Steve Kick; and Richard
Taylor, Appellees/Cross-Appellants,
v.
Crispus C. NIX and Paul Grossheim, Appellants/Cross-Appellees.
 Nos. 90-1853, 90-1868.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 8, 1991.
Decided Nov. 29, 1991.
 
 William Hill, Asst. Atty. Gen., Des Moines, Iowa, argued (Gordon Allen, and Layne Lindebak, Asst. Attys. Gen., on brief), for appellants.
 Philip B. Mears, Iowa City, Iowa, argued, for appellees.
 Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and SACHS,* District Judge.
 SACHS, Chief Judge.
 
 
 1
 William Leroy Patchette, a prisoner at Iowa State Penitentiary Farm I, sometimes referred to as the Augusta Unit, cross-appeals the decision of the United States District Court for the Southern District of Iowa[1] that conditions at Farm I do not violate the Eighth Amendment of the United States Constitution. Farm I prison officials appeal the district court's decision that they restricted visitation privileges in violation of the inmates' due process rights.
 
 
 2
 Farm I is a minimum security facility originally designed to hold 65 inmates. Prison officials gradually increased the population of Farm I to 120 inmates because they anticipated the transfer of inmates from Farm I to a nearby facility, Farm III, which was closed but expected to reopen.
 
 
 3
 To accommodate the increased number of prisoners, prison officials converted Farm I's downstairs visiting room into a dormitory for 30 inmates. The overcrowding allegedly caused excessive noise and poor ventilation, and overburdened Farm I's toilets, urinals, showers, and sinks. The most egregious claim presented, and the issue developed and argued on cross-appeal, relates to insufficiency of toilet facilities.
 
 
 4
 To alleviate the effects caused by the overcrowding, prison authorities extended the hours during which inmates could use the showers, telephones, and dining hall. The prison officials also modified the visitation schedule to reflect the reduction in visitation area, effectively diminishing weekend visitation privileges by one half.
 
 
 5
 Patchette instituted this action in October 1989, contending that the inmates had a liberty interest in the existing visitation regulations and schedule which were altered without complying with state standards for regulation changes. Patchette also claims that the overcrowded prison conditions violated the Eighth Amendment. Responding quickly to the complaint, the district court scheduled a prompt hearing, attempting to develop the facts without appointment of counsel. Upon learning that the move to Farm III would not be feasible in February 1990, as originally forecast, but would be delayed until mid-April 1990, the court appointed counsel and held a further hearing as soon as counsel were prepared. The district court ultimately agreed that the regulations provided a liberty interest in the existing visitation hours and that defendants had summarily changed rather than applied the visitation rights of inmates, contrary to due process. The court did not find an Eighth Amendment violation. Patchette and the prison officials appealed.
 
 VISITATION
 
 6
 A liberty interest may arise from state laws. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). To determine whether state laws create a liberty interest, the state regulations and procedures must 1) place "substantive limitations on the exercise of official discretion;" and 2) contain " 'explicitly mandatory language,' i.e., specific directives to the decision maker that if the regulations' substantive predicates are present, a particular outcome must follow." Id. at 462-63, 109 S.Ct. at 1909-10. This method of inquiry requires the court to examine closely the language of the relevant statutes and regulations. Id. at 461, 109 S.Ct. at 1909.
 
 
 7
 Section 21.5(1) of the Iowa Administrative Code relating to the Corrections Department governs prison visitation. The relevant visitation rule for minimum security units (including Farm I) provided: "Visiting hours are Saturday, Sunday, and state holidays from 8:30 a.m. to 3:30 p.m."
 
 
 8
 On October 5, 1989, the warden at the Iowa Men's Penitentiary implemented "emergency visitation procedures" limiting visitation to alternate weekends rather than every weekend. The prison officials contend that Section 20.3(16) and the current Section 20.3(246) authorize such summary modification of the visiting hours. These sections provided:
 
 
 9
 (16) Visiting procedures may be temporarily modified or suspended in the following circumstances: riot, disturbance, fire, labor dispute, space restriction, natural disaster, or other extreme emergency.
 
 
 10
 (246) Inmates are encouraged to maintain and strengthen relationships with family members and friends. Though visits are encouraged as a means to accomplish this, the number and length of visits may be limited by the institution's schedule, space, personnel constraints, treatment consideration, or other substantial reasons relating to the safety and security of the institution and its operations.
 
 
 11
 The district court held that Administrative Code §§ 20.3 and 21.5 established a liberty interest in weekend visitation under the Thompson test. Therefore, it ruled that defendants violated the plaintiffs' constitutional rights under the Fourteenth Amendment by unreasonably and unnecessarily restricting weekend visitation without having the Code changed prospectively or otherwise providing due process. Although the "emergency visitation restrictions" ended when inmates were moved into Farm III on April 16, 1990, the district court concluded that a reasonable likelihood existed that prison officials would restrict visitation again should Farm I become overcrowded. Consequently, the district court entered a decree enjoining the prison officials from modifying visitation without complying with due process.[2]
 
 
 12
 We agree with the district court that the visitation regulations created a liberty interest. Much like the Kentucky regulations in Thompson, the regulations and procedures at issue provide certain substantive predicates to guide the decision maker. Section 21.5 fixes visitation hours at certain times. Sections 20.3(16) and (246) allow modification only when the listed conditions exist; i.e., extreme emergency or substantial reasons related to the safety and security of the institution. These regulations limit prison officials' discretion when establishing visitation schedules and determine whether the visitation privileges should be altered.
 
 
 13
 The Administrative Code regulations satisfy the second part of the Thompson test requiring relevant mandatory language. Absent the circumstances listed in Section 20.3, the regulations establish that visitation will occur every weekend as provided by Section 21.5. While the usual mandatory form of words is not used, the language committing the institutions to certain visitation privileges is unqualified by a general retention of discretion. Decision makers and inmates alike are told what hours and days "are" to be set aside for visitation. This is recognized as mandatory language. Thompson, 490 U.S. at 464 n. 4, 109 S.Ct. at 1910 n. 4.[3] We are satisfied that the district court properly found that Section 21.5 of the Iowa Administrative Code creates a liberty interest in weekend visitation which could not be abridged without affording the inmates due process.
 
 
 14
 The prison officials contend that the overcrowding created an "extreme emergency" or "space restrictions" which allowed summary modification of the visiting schedule. Section 20.3(16). They also contend the visitation restrictions were necessary for the safety and security of the institution. Section 20.3(246).
 
 
 15
 The district court rejected these contentions because the officials failed to show that the overcrowded conditions created an extreme emergency, safety and security concerns, or space restrictions which necessitated temporarily and suddenly abridging the inmates' visitation rights. The overcrowded prison resulted from the prison officials' decision to house inmates at Farm I until Farm III opened. The Board of Corrections predicted in June 1989 that the loss of the downstairs visitation room would create visitation difficulties but recognized that the unavailability of the downstairs visiting area could be offset by providing alternative visitation areas rather than by restricting visitation.
 
 
 16
 It will be noted that all of the described events in Section 20.3(16) which would allow a temporary modification or suspension of visiting procedures are clearly within the general descriptive language referring to "extreme emergenc[ies]," with the debated exception of "space restriction[s]." Under normal rules of construction, in common sense and legal parlance, the "space restriction" term should reasonably be understood in context as a restriction occurring suddenly rather than a condition that has been predicted for many weeks or months. As the district court noted, when prison officials planned it that way an event can hardly be described as another "extreme emergency."
 
 
 17
 The more general provisions of Section 20.3(246) do not supersede the specification of conditions allowing summary action. The wording indicates that the section relates to restrictions on individualized visitation, as when some inmates or visitors abuse the privilege by excessive usage which would so overcrowd the visiting facilities as to inconvenience or frustrate the usage of others. In any event, the section should not be construed in a manner that would place it in conflict with Section 20.3(16).
 
 
 18
 The court recognizes that the proper reading of rules and regulations should often be left to the parties charged with administration. In the present instance, however, we believe the district court was plainly correct and that defendants' actions were more nearly attributable to a preference for administrative convenience or neglect to take timely action than to a fair reading of the governing sections. In any event, defendants remain largely in control of the regulations and have an opportunity to modify them in an orderly fashion if the ruling below is deemed unduly restrictive. Compare Iowa Code § 17A.4; Clark v. Brewer, 776 F.2d 226, 232 (8th Cir.1985).[4]
 
 
 19
 The prison authorities advance a further contention that the issue is not whether the regulations created a liberty interest but whether the defendants followed state law when the warden modified the inmates' visitation rights without properly amending the regulations in accordance with the Iowa Administrative Procedures Act. The prison authorities argue that the district court's holding was not that the regulations granted a liberty interest; rather, the district court interpreted the Iowa Administrative Procedures Act and determined that the warden did not comply with proper amendment procedures. According to defendants, this violates the Eleventh Amendment. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984) ("it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law").
 
 
 20
 We disagree. The issue presented was not whether the warden's action constituted a violation of state law. See Iowa Code § 17A.2(7)(k) (limitation on rulemaking procedures in prison setting). Patchette alleged that his constitutional right to due process had been violated. The district court found that the Iowa visitation regulations created a liberty interest which the defendants failed to recognize. It is true that if the regulation had been amended to authorize the warden's actions, the regulation would not have created a liberty interest. But the regulations did create a liberty interest and the warden restricted it without providing due process. Federal courts do not violate the Eleventh Amendment when they enjoin state officials from violating federal law. Pennhurst, 465 U.S. at 102, 103, 104 S.Ct. at 909, 909. Under existing law, federal courts must necessarily construe local law and administrative regulations to ascertain if there is a liberty interest protected by the federal constitution. See, e.g., Taylor v. Armontrout, supra.
 
 PRISON CONDITIONS
 
 21
 The Eighth Amendment prohibits punishments which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain" or "are grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). Patchette contends the overcrowded conditions rise to an unconstitutional level.
 
 
 22
 There is no static test for determining whether conditions of confinement are cruel and unusual. The Eighth Amendment must draw its meaning from the evolving standards of decency that mark the process of a maturing society. Rhodes, 452 U.S. at 346, 101 S.Ct. at 2399. Whether conditions at a specific prison are unconstitutional necessitates a factual inquiry about the specific conditions at that facility.
 
 
 23
 The district court visited Farm I and expressed concerns about the problems which the overcrowding was creating. The overcrowding caused fire safety concerns and overloaded shower and toilet facilities which were inadequate to satisfy more than 100 inmates. The court found, however, that the temporary living arrangements did not "evince the 'wanton and unnecessary infliction of pain' necessary to constitute a violation of the Eighth Amendment." Cody v. Hillard, 830 F.2d 912, 914 (8th Cir.1987), cert. denied, 485 U.S. 906, 108 S.Ct. 1078, 99 L.Ed.2d 237 (1988), quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).
 
 
 24
 We agree. The evidence on the record is insufficient to support a conclusion that the overcrowding led to deprivations of essential food, medical care, or sanitation, nor increased violence among inmates or other conditions intolerable for prison confinement. Cody v. Hillard, 830 F.2d 912, 914 (8th Cir.1987), citing Rhodes, 452 U.S. at 348, 101 S.Ct. at 2400. The problems suffered by plaintiffs at Farm I are akin to mere inconveniences rather than intolerable deprivations. Howard v. Adkison, 887 F.2d 134, 137 (8th Cir.1989).
 
 
 25
 The shortage of toilet facilities at Farm I raises the most difficult aspect of the Eighth Amendment claim and presents a rather close case. The district court found that Farm I had one toilet for every 24 inmates. By comparison, the American Correctional Association recommends one toilet per 12 inmates. These standards, however, do not establish constitutional minima. Rather, they are simply factors which a court should consider in evaluating the unconstitutionality of the conditions. Cody v. Hillard, 830 F.2d at 914, citing Bell v. Wolfish, 441 U.S. 520, 543-44 n. 27, 99 S.Ct. 1861, 1876 n. 27, 60 L.Ed.2d 447 (1979).
 
 
 26
 The limitation on available toilets was claimed by several prisoner witnesses to have presented significant problems at the end of the work day and even more severe problems when most of the prisoners awaken, in the early morning hours. It was claimed that lines of prisoners formed, that some would be required to wait for fifteen minutes or more, and that it was not infrequent that inmates would be forced to use the showers as urinals.
 
 
 27
 The district court was entitled to conclude that this testimony was somewhat exaggerated and that the temporary nature of the deficiency was a factor justifying a ruling for defendants.[5]
 
 
 28
 Complaints about a shortage of toilet facilities had not been heard by prison administrators prior to litigation. The prisoner giving the most dramatic testimony about delays and use of the showers as urinals did not keep regular hours and generally slept through the early morning. He acknowledged a practice of complaining about something "every day." Other prisoner witnesses called by plaintiff gave more conclusory testimony or referred to shorter delays, and some did not specify any complaint about the limited availability of toilet facilities. The motivation of any prisoners using the showers as urinals was not established; dire physical necessity is of course not the only possibility.
 
 
 29
 Even assuming that under some circumstances a 50% deficiency in toilet facilities would be classified as an Eighth Amendment violation, in the present case corrective action by moving the prisoners was expected in a matter of months, initially anticipated as being some six months. As noted in Hutto v. Finney, 437 U.S. 678, 686-87, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978), unsatisfactory conditions are often constitutionally tolerable or intolerable depending upon their anticipated duration. The temporary overcrowding of facilities at Farm I seems to have been accompanied by very poor planning in some respects, but we agree with the district court's conclusion that there was no Eighth Amendment violation.
 
 
 30
 Accordingly, the district court's decision is affirmed.
 
 
 
 *
 The HONORABLE HOWARD F. SACHS, Chief Judge, United States District Court for the Western District of Missouri, sitting by designation
 
 
 [1]
 The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa
 
 
 [2]
 The district court enjoined the defendants from restricting the inmates' rights of visitation
 except in strict accordance with a fair reading of the rules governing visitation set forth in the Iowa Administrative Code, or unless defendants first accord the inmates their right to due process. Defendants shall not invoke restrictions based on an extreme emergency or substantial reasons relating to the safety and security of the institution and its operations if the conditions are brought about by defendants' own actions, such as defendants' deliberate decision made in the summer of 1989 to reduce the space available for visitation by placing inmates in that space. (May 16, 1990, Order).
 
 
 [3]
 Thompson was a case in which the prison authorities prevailed in limiting visitation by particular individuals. There was no general limitation on visitation, as in this case
 
 
 [4]
 Without contending that there is an exact precedent for the ruling here in this circuit, we believe our decision is comparable to that in a Missouri prison regulation case, Taylor v. Armontrout, 894 F.2d 961 (8th Cir.1989), which also dealt with visitation rights and found violation of a protected liberty interest
 
 
 [5]
 The findings below are less detailed than might have been useful for purposes of review on the issue most closely contested on appeal, but we conclude that the ultimate result is sufficiently predictable that it would be unduly burdensome to remand for further findings