Tony WILLIAMS, Plaintiff–Appellee,

v.

Crispus C. NIX;  Defendant–Appellant,

Iowa State Penitentiary, Defendant,

Paul Hedgepeth;  Charles Harper;  George Fenn;  V.J. Damico, Lt.;  Harry Grabowski, Major;  Dennis Burns, C/O;  Bruce McDonald;  Defendants–Appellants.

Tony WILLIAMS, Plaintiff–Appellant,

v.

Crispus C. NIX, Defendant–Appellee,

Iowa State Penitentiary;  Defendant,

Paul Hedgepeth;  Charles Harper;  George Fenn;  V.J. Damico, Lt.;  Harry Grabowski, Major;  Dennis Burns, C/O;  Bruce McDonald;  Defendants–Appellees.

Tony WILLIAMS, Plaintiff–Appellee,

v.

Crispus C. NIX, Defendant–Appellant,

Iowa State Penitentiary;  Defendant,

Paul Hedgepeth;  Charles Harper;  George Fenn;  V.J. Damico, Lt.;  Harry Grabowski, Major;  Dennis Burns, C/O;  Bruce McDonald;  Defendants–Appellants.

Nos. 91–3187, 91–3238 and 92–1837.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1992.

Decided Aug. 10, 1993.

Rehearing Denied Oct. 14, 1993.

Layne M. Lindebak, Asst. Atty. Gen., Des Moines, IA, argued, defendant-appellant.

James P. Cleary, Phoenix, AZ, argued, for plaintiff-appellee.

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and ROSENBAUM,* District Judge.

ROSENBAUM, District Judge.

Robert Anthony Williams, a prisoner, brought this suit against prison officials[1] at Iowa State Penitentiary (ISP), claiming violations of his civil rights, pursuant to 42 U.S.C. § 1983. After trial, he was awarded money damages and injunctive relief arising from disciplinary reports he received while at the

---

* The HONORABLE JAMES M. ROSENBAUM, United States District Judge for the District of Minnesota, sitting by designation.

1. The ISP defendants are Crispus Nix, Warden; Paul Hedgepeth, Administrative Assistant to the Warden; Ron Welder, Assistant to the Warden; Charles Harper, Hearing Officer; George Fenn, Counselor; V.J. Damico, Correctional Officer; Major Harry Grabowski, Internal Affairs head; Dennis Burns, Correctional Officer; Bruce McDonald, Iowa Department of Justice; Harold Farrier, Iowa Department of Corrections; and Loretta Cooper, Iowa Department of Health.

penitentiary and in connection with his transfer from ISP to the United States Bureau of Prisons (BOP).

The defendants appeal the district court's finding that three of four disciplinary reports, and the prison's handling of Williams's legal papers, violated his due process rights. The defendants also appeal an award to Williams's counsel of $35,000 in attorneys' fees and costs. Williams cross-appeals, asserting that the district court erred in denying his due process claims concerning the fourth disciplinary report and his transfer to the BOP. The rulings of the district court are affirmed in part and reversed in part. The award of attorneys' fees is vacated.

## I. BACKGROUND

Williams is serving a life term for first degree murder. Since his incarceration in May, 1969, he has developed a "practice" as a jailhouse lawyer. Between the years of 1984 and 1986, Williams received the four disciplinary reports which underlie his complaint.

The first such disciplinary report was issued in May, 1984, after prison officials intercepted a letter (the "10–green" letter) written by Williams to a fellow inmate. This letter reads in pertinent part:

> My retainer fee is 10 green to be paid as you see fit—at the moment I can always use envelopes with stamps—legal pads—ink pens—pringles and/or soap (camay—Lux) candy/bars—cookies—that kind of thing.... Again as you see fit—and as your finances permit....

The interception of this note led to a hearing at which the ISP disciplinary committee found that Williams violated prison "bartering rules" prohibiting the exchange or attempt to exchange items of value.[2] The committee sentenced Williams to six months of administrative segregation and ordered that he cease engaging in jailhouse lawyering activities.

In June, 1984, while the sanction for the 10–green offense remained in effect, Williams received a second disciplinary report. He was found in possession of another inmate's legal papers. This led to a charge of violating the disciplinary committee's prior sanction barring him from practicing as a jailhouse lawyer.[3] As punishment, he was sentenced to ninety days of administrative segregation.

In August, 1984, Williams received the third disciplinary report. This report arose

2. The committee charged Williams with violating the following "prohibited acts/rule violations" set forth in the prison rules:

> 40. Conduct which disrupts or interferes with the security, tranquility, or orderly running of the institution.
> ....
> 59. Correspondence or conduct with any person in violation of posted rules.
> 60. Giving, receiving and/or coercing or offering any person a bribe or anything of value including contraband or in an attempt to gain special favors or circumvent established procedure.
> 61. Giving money or anything of value to, or accepting money or anything of value from another person.
> ....
> 63. Attempting any of the above offenses, ... and making plans to commit any of the above offenses.

Rules, Regulations, and Disciplinary Procedures for the Government of the Iowa State Penitentiary Inmates (1979).

3. Williams was found to have violated prison rules 16 and 23 of the new rules, which became effective May 16, 1984. Rules 16 and 23 read as follows:

> 16. *Unauthorized Possession:* An inmate commits an offense under this subsection if the inmate has in possession on the person, in this inmate's cell, in the inmate's immediate sleeping area, locker, or immediate place of owrk (sic) or other program assignment; or received from or gives to another inmate or fashions or manufactures or introduces or arranges to introduce into the institution any contraband delineated as contraband, including but not limited to:
> ....
> g. Property belonging to someone else or anything not authorized.
> ....
> 23. *Disobeying a Lawful Order:* An inmate commits an offense under this subsection when the inmate refuses to obey an order, rule, regulation, or procedure, written or verbal, given by any staff of the Division of Corrections, or other person in authority, which is reasonable in nature, and which gives reasonable notice of the conduct expected.

Rules, Regulations, and Disciplinary Procedures for the Government of the Iowa State Penitentiary Inmates (1984).

when Williams threw a lit matchbook into a trash barrel on May 7, 1984.[4] After a hearing, this report led to one year of administrative segregation.

The fourth disciplinary report was filed in May, 1986, after an ISP counselor discovered a pre-stamped envelope addressed to the Lee County District Court Clerk which Williams was attempting to send to a fellow inmate.[5] This report charged Williams with violating prison rules prohibiting "disobeying a lawful order;" "bartering, selling good, etc.;" and "misuse of mail, telephone, and other communications."[6] The disciplinary committee initially sentenced Williams for this offense, but the punishment was suspended in light of the committee's determination that the exchange of such envelopes was a common practice at the ISP.

Finally, Williams was transferred, without notice, from the ISP to the Federal Medical Center at Springfield, Missouri, on August 20, 1987. During this transfer from ISP, Williams was separated from his legal papers. In August, 1988, those materials were either returned to the appropriate inmates at the ISP or, if the inmate was no longer at ISP, returned to Williams.

On June 7, 1984, Williams filed his pro se complaint alleging violations of his civil rights under 42 U.S.C. § 1983. This complaint was amended and supplemented to allege that the four disciplinary reports were issued in retaliation for his activities as a jailhouse lawyer, that the disciplinary rules as applied to jailhouse lawyers were unconstitutionally vague, and that the sanctions imposed upon him were excessive and violated his Eighth Amendment rights. Williams also asserts a denial of due process in the hearing regarding the 10-green letter.

Claiming First and Fourteenth Amendment violations, Williams further challenged his transfer to the BOP. He claimed the defendants transferred him to impede his activity as a jailhouse lawyer. He also claims that ISP's handling of the legal papers, at the time of his transfer, violated prison policies and a prior consent decree, resulting in a loss of his due process rights. Williams further sought relief on behalf of other prisoners whose papers had been retained by the defendants upon his transfer. Finally, Williams claimed that prison officials filed bogus disciplinary charges to retaliate against several prisoners who testified on his behalf at the district court's preliminary injunction hearing. As a result of all these claimed injuries, Williams sought damages as well as declaratory and injunctive relief.

4. Williams was found guilty of the following rule violations in connection with the matchbook incident:

> 12. Setting or attempting to set a fire.
> 13. Destroying, altering, or damaging state property or the property of another person.
> ....
> 40. Conduct which disrupts or interferes with the security, tranquility, or orderly running of the institution.
> ....
> 44. Failure to follow safety or sanitary regulations.
> ....
> 63. Attempting to commit any of the above offenses.

Rules, Regulations, and Disciplinary Procedures for the Government of the Iowa State Penitentiary Inmates (1979) (the 1979 version of the rules applied since the incident took place prior to May 16, 1984).

5. The record reveals that, two months prior to this incident, a prison counselor had returned a pre-stamped envelope to Williams. The counselor advised Williams to cease sending pre-stamped envelopes to other prisoners.

6. The prison rules state, in pertinent part:

> 23. See n. 3
> ....
> 33. *Bartering, Selling Goods, etc.*: An inmate commits an offense under this subsection when the inmate:
> > a. Barters, loans, gives, accepts, sells, or buys things or services of value, including but not limited to, those items sold in the commissary, clothing, housing furnishings, art and craft items, or
> > b. Transfer or attempts to transfer or accepts transfer of funds from the account of one inmate to that of another inmate.
> ....
> 40. *Misuse of Mail, Telephone, and Other Communications*: Any inmate commits an offense under this subsection when the inmate fails to follow institutional procedures, regulations or instructions, written or verbal for the use of institutional communication facilities such as the mail or telephones, or uses such facilities without proper authorization.

Rules, Regulations, and Disciplinary Procedures for the Government of the Iowa State Penitentiary Inmates (1984).

On January 4, 1985, following a hearing, the district court preliminarily enjoined defendants from preventing Williams's jailhouse lawyer work. On August 16, 1991, the district court made its preliminary injunction permanent and filed its findings of fact and conclusions of law. On March 3, 1992, the district court filed its award of attorney's fees. These appeals followed.

## II. DISCUSSION

### A. Prison Rules

The Iowa defendants appeal from the district court's finding that the prison rules prohibiting bartering were unconstitutionally vague as applied to Williams. According to the district court, the 10–green letter was merely "aspirational" and not a request for payment. Since the disciplinary rules did not encompass "aspirational" statements, the court found that the rules, as applied to Williams, were void for vagueness. Defendants further contest the court's finding that prison rules did not clearly prohibit the exchange of pre-stamped envelopes and that the June, 1984, report for possessing another inmate's legal papers was flawed since "it was based on the invalid sanction of disbarment." Williams appeals the court's finding that no due process violations occurred in connection with the disciplinary proceedings for the matchbook incident.

It is axiomatic that due process requires fair notice of prohibited conduct before a sanction can be imposed. *Coffman v. Trickey*, 884 F.2d 1057, 1060 (8th Cir.1989), *cert. denied*, 494 U.S. 1056, 110 S.Ct. 1523, 108 L.Ed.2d 763 (1990) (*citing Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972)); *Bouie v. City of Columbia*, 378 U.S. 347, 350–51, 84 S.Ct. 1697, 1700–01, 12 L.Ed.2d 894 (1964). This principle applies within the prison setting. *Id.* (*citing Gibbs v. King*, 779 F.2d 1040, 1044 (5th Cir.), *cert. denied*, 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986)).

■ Here, the ISP rules prohibit "[g]iving money or anything of value to, or accepting money or anything of value from another person" or "attempting" or "making plans" to do so. This court finds that the rule is clear: inviting payment, in any form, is prohibited. Therefore, we find that whether Williams's 10–green letter is "aspirational," or an outright charge for services, the 10–green letter falls within the rules' prohibitions.

■ Similarly, an attempt to deliver a pre-stamped envelope to a fellow inmate falls squarely within the prohibition against "giv[ing] ... things of value" to another inmate. Here, the record demonstrates that Williams had previously been told he was not to exchange pre-stamped envelopes. We hold, therefore, that the defendants did not violate Williams's constitutional rights by sanctioning him for the 10–green letter or for sending the pre-stamped envelope.

This determination requires that we reverse the district court's finding that Williams's "disbarment" for possession of another inmate's legal papers was invalid. As we have found the bartering rule to be valid, the punishment for its violation must be upheld.

■ The district court was concerned that the rule book did not explicitly list disbarment as a potential sanction. The ISP rules provide the committee with authority to impose a sanction of "loss of privileges, such as commissary, movies, television, radio, recreational activities, etc." where authorities find a rule infraction. The list of privileges is clearly not all-inclusive. Our precedents dictate that "disbarment" of a jailhouse lawyer can be a constitutionally valid sanction. Performing lawyering functions on behalf of fellow inmates is a privilege, not a right. While it is well established that inmates' access to the courts and counsel may not be abridged, *see Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 490, 89 S.Ct. 747, 751, 21 L.Ed.2d 718 (1969); *Gassler v. Rayl*, 862 F.2d 706, 707 (8th Cir.1988), an individual inmate does not have a constitutional right to "practice" jailhouse law. As *Gassler* makes explicit, "an inmate simply does not have the right to provide his fellow inmates with legal assistance." *Gassler*, 862 F.2d at 708; *see also Flittie v. Solem*, 827 F.2d 276, 280 (8th Cir.1987).

Accordingly, we reverse the district court holding that the prison rules were void for vagueness.

Finally, we find no clear error in the district court's conclusion that no due process violations occurred in connection with those disciplinary proceedings relating to the matchbook incident, and affirm the district court in that regard.

## B. Transfer

We affirm the district court in its decision concerning Williams's transfer. The court properly held that Williams's transfer, whether or not motivated by his lawyering activities, did not violate his constitutional rights. *See, e.g., Olim v. Wakinekona*, 461 U.S. 238, 244–45, 103 S.Ct. 1741, 1744–45, 75 L.Ed.2d 813 (1983); *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Further, we find no clear error in the district court's conclusion that Williams failed to carry his burden of proving that the exercise of his right of access to the courts motivated the transfer. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

## C. Handling of Legal Papers

The district court held that the defendants violated Williams's due process rights by handling his legal materials in a manner which violated prison policy and the *Dee v. Brewer*, Civil No. 77–102–1 (S.D.Iowa July 25, 1980), consent decree which established that policy.[7] The court awarded Williams $1.00 in nominal damages for these violations. We reverse.[8]

■ Procedural due process extends only to rights encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of Regents v. Roth*, 408 U.S. 564, 569–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972). Such interests may be created by state laws and policies, including prison regulations. *Id.* at 573, 577, 92 S.Ct. at 2707, 2709; *Patchette v. Nix*, 952 F.2d 158, 160 (8th Cir.1991). It is clear, however, that, without more, the mere violation of a state law or rule does not constitute a federal due process violation. *Meis v. Gunter*, 906 F.2d 364, 369 (8th Cir.1990) (en banc), *cert. denied*, 498 U.S. 1028, 111 S.Ct. 682, 112 L.Ed.2d 673 (1991) (*citing Snowden v. Hughes*, 321 U.S. 1, 11, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944)).

■ The simple specification of a particular procedure does not create a Fourteenth Amendment liberty interest. *See, e.g., Olim*, 461 U.S. at 249–51, 103 S.Ct. at 1747–48. State laws and regulations create a protectable liberty interest only when they (1) "place substantive limitations on the exercise of official discretion;" and (2) contain " 'explicit mandatory language' " comprising " 'specific directives to the decision maker that if the regulations' substantive predicate acts are present, a particular outcome must follow.' " *Patchette v. Nix*, 952 F.2d 158, 160 (8th Cir.1991) (*quoting Kentucky Dept. of Correc-*

7. The policy regarding transferring inmates to other institutions reads, in pertinent part:
   1. The cellhouse supervisor of the sending institution will ensure that an inventory sheet, indicating each piece of inmate personal property leaving the institution is completed ... Those papers designated as legal papers, will be searched in the presence of the inmate for contraband, not read, then sealed into a container with the rest of his personal property. The search of legal papers will take place immediately prior to departure. This container with legal papers shall be clearly marked on the outside "Contains Legal Papers or Legal Material." The inventory will note the number of containers with legal papers and the total number of containers for all the inmate's property.
   . . . .

   c. The sealed containers of personal property will remain in the observation of the inmate throughout the actual transfer process.
   . . . .
   e. The only deviation from this policy as it relates to Dee vs. Brewer will be on direct written authorization from the inmate, the Warden, or when the health or safety of the inmate is in jeopardy. The highest ranking official on duty may make an exception. This exception is to be noted in the Blotter as well as the reasons for making this deviation.

8. The district court found that the plaintiff lacked standing to assert this claim on behalf of other inmates. For the reasons set forth, we need not consider the standing question.

*tions v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989)).[9]

■ This prison regulation fails both prongs of the *Thompson* test. First, the regulations place no substantive restrictions on the discretion of ISP officials. While the rules provide for written authorization before deviation from the policy, the decision as to when the prison officials can deviate from the policy is unfettered and unchecked. Second, while the policy contains " 'explicit mandatory language' " governing the procedures for handling a prisoner's papers, it does not command a particular outcome or response when certain criteria are found to exist. In other words, these regulations are no more than simple procedural guidelines or straightforward commands. Accordingly, we do not find that the ISP policy creates a protectable liberty interest.

We also conclude that Williams is not entitled to relief on the basis that the defendants acted contrary to the *Dee v. Brewer* consent decree. Williams did not plead contempt, nor is there any indication that the district court invoked its inherent contempt powers. *Cf. Welch v. Spangler,* 939 F.2d 570 (8th Cir.1991); *DeGidio v. Pung,* 920 F.2d 525 (8th Cir.1990); *Green v. McKaskle,* 788 F.2d 1116 (5th Cir.1986).

On these bases, we reverse the district court's finding in favor of the plaintiff on his due process claim.

### D. Attorney's Fees

No issues in this case having been resolved in Williams's favor, the district court's award of attorney's fees must be vacated. While it is small recompense, we recognize and commend Mr. Cleary's efforts on behalf of his client and his service to this Court.

## III. CONCLUSION

The rulings of the district court are affirmed in part and reversed in part. This matter is remanded to the district court for entry of judgment as directed herein.

---

9. *See Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (when a statute creates a right to good time credits, which can be forfeited only for serious misbehavior, the state has created a liberty interest, and due process protections attach to insure that the interest is not arbitrarily abrogated). *See also Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) (prison statutes and regulations created a liberty interest in remaining in the general prison population); *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (state created liberty interest in parole).