Jack L. LOSEE, Jr., Plaintiff,

v.

Crispus C. NIX; John R. Emmett; and Roger Lawson, Defendants.

Civ. No. 4–92–CV–20852.

United States District Court, S.D. Iowa, C.D.

Jan. 14, 1994.

Jack L. Losee, Jr., plaintiff pro se.

Assistant Atty. Gen. Suzie Berregaard Thomas, Des Moines, IA, for defendants.

## OPINION AND JUDGMENT

BREMER, United States Magistrate Judge.

This matter came before the Court for trial on November 5, 1993. Plaintiff, Jack Losee, Jr., appeared pro se. Defendants appeared by Assistant Attorney General Suzie Berregaard Thomas. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that he was deprived of a liberty interest when he was placed in investigative segregation for forty-one days. He alleges this is a *de facto* punitive status at the Iowa State Penitentiary (ISP). After the investigation was completed, Losee was not charged with any violation of a disciplinary rule. Pursuant to institution policy, Losee was given twenty-eight days of back pay for the work he missed; he claims that he is entitled to the full forty-one days of back pay, and seeks money damages. Defendants, officials at ISP, deny Losee's claims and raise the affirmative defense of qualified immunity. The court has received post trial briefs from all parties. This matter is fully submitted.

### *FINDINGS OF FACT*

On Wednesday, June 24, 1992, Losee, who is serving a life sentence, resided in general population and had a work assignment where he earned thirty-two cents an hour, for six hours a day, five days a week on ISP's yard crew. On June 24 he was transferred from general population to cellhouse 220, a maximum security unit at ISP. On June 29 he was transferred to cellhouse 319, another maximum security unit. Upon the transfers from general population, Losee's status was classified as investigatory segregation and his personal property was removed. Investigatory segregation is a nonpunitive status. Generally, regardless of their status, inmates residing in maximum security cellhouses, such as 220 and 319, may only possess the personal property which the inmates who are serving disciplinary time in administrative segregation may possess.

The exception to this policy is for inmates who are in the close management program in cellhouse 319. This is a behavior modification program for inmates who have served more than thirty days disciplinary detention. These inmates are considered to be in a nonpunitive status, and have more privileges, including additional property, than inmates who are serving administrative segregation sentences. Close management inmates are clustered in one area of the cellhouse, to facilitate supervision, and reduce the potential for the inmates to "jigger," or move, personal property from their cells to other cells. An inmate who passes personal property could lose his close management privileges, and be subject to disciplinary detention.

The inmates held in investigatory segregation comprise approximately ten percent or less of the cellhouse 319 population of over 100 inmates, and are interspersed among the other residents for security purposes. They are not clustered in any one area, as are the close management inmates.

ISP had a serious problem with the unauthorized migration of inmates' personal property via "jiggering" throughout cellhouse 319. In April 1992, after conferring with counsel from the Iowa Attorney General's Office, ISP administrators imposed a policy which removed "general population" types of personal property from investigatory segregation inmates so that inmates in all administrative segregation statuses (summary segregation, administrative segregation, and investigatory segregation) had the same property. ISP administrators determined that too much staff time was required to keep the differing amounts of authorized personal property appropriately allocated, and noted that numerous disputes were caused between staff and inmates, or among the inmates, over who was entitled to what items of personal property. Since the imposition of this policy, possession of unauthorized personal property by inmates serving punitive segregation time has been significantly reduced, resulting in reduced staff time spent managing personal property issues.

Thus, the only actual difference between an inmate placed in investigatory segregation versus one serving a punitive administrative segregation is that the inmate in investigatory segregation receives more phone calls, and his status "on the books" is nonpunitive. The documentation of status is important in calculation of good and honor time (which is of negligible value to someone serving a life sentence), as well as eligibility for parole, or placement in special programs.

ISP Director of Security John Emmett has an informal, unwritten policy that if an inmate is placed in investigatory segregation and is not subject to a disciplinary report as a result of the incident for which he was placed in investigatory segregation, then he is authorized "some" credit for the time spent in investigatory segregation against future punitive administrative segregation time which he might accrue. The decision to grant this credit toward future penalties is at the discretion of the Security Department. Emmett testified that the inmate is not given a block of "credit for time served," as this would be the equivalent of a "get out of jail free card" and encourage an inmate to engage in disruptive behavior, knowing that he would not have to face an immediate sanction due to the time already served. The Security Department in this case will grant Losee some credit toward future disciplinary time. As Losee has received no disciplinary sanctions subsequent to June 1992, he has not been able to use his "free" disciplinary time.

ISP policy regarding investigatory segregation provides that an inmate will not spend more than thirty days in investigatory segregation without the express written authorization of the warden.[1] Losee received a notice of being placed in investigative segregation on the same day of being moved from general population. See Plaintiff's Exhibit 4. He maintains that he did not receive any subsequent notices of his continued placement in this status. See Plaintiff's Supplemental Post Trial Brief. The Court finds that Losee did receive ongoing notice of the continuation of his status, oral and written, while he was in investigatory segregation. See Defendant's Exhibit D, which Losee claims to have seen for the first time after the trial in this case; however, this is the second page of Plaintiff's Exhibit 3.

1. The ISP policy 85–7–16–651BR provides:
DEFINITION:
Investigative Section:
*Inmates may be placed in this status for the purpose of investigation. This status is not disciplinary and should not last beyond 30 days without written consent of the Warden.* Persons in this status may be given the in-cell privileges of their former status and the out-of-cell privileges of an inmate in summary segregation. Inmates in this status will usually be notified within 48 hours of the reason for placement.
PROCEDURE:
When an inmate is considered for this status, the following criteria should be met:
A. Request for use of status
The investigation section should be prepare a written request and documented evidence that demonstrate a reason to believe that an incident has or will occur that constitutes violations of specific rules, crime, or serious threats to the safety of employees, inmates, other persons, or property; that the inmate being investigated is involved in the incident; a reason for the request; and a summary of the alleged incident. This will usually be approved by the Warden, Deputy Warden, or Officer of the Day.
B. Considerations
Before the approving authority decides to authorize this status, the following items should be considered.
1. Security reason for the investigation
2. Purpose of the investigation
3. Any alternative methods that may be used
4. Seriousness of the incident
5. Reliability of the information obtained.
C. Notifications
*The inmate will usually be notified within 48 hours of his placement into this status. No further notices or continuances are necessary until the investigation is complete.* If the investigation is complete, the inmate should be removed or placed into another status within 24 hours.
D. Extended Status
If an inmate is retained in this status for longer than 30 days at the Warden's direction, he normally will be reviewed every 30 days for the appropriateness of continuing his status unless it has been determined that no further reviews are necessary.
E. Completion of Status
A[t] the completion of this status, an inmate may be returned to his former status, placed in prosecutor's hold, summary segregation or any other appropriate status in accordance with current ISP Procedures.
ISP Policy & Procedure Statement, Policy No. 85–7–16–651BR (emphasis added).

Additionally, ISP policy authorizes the grievance hearing officer to reimburse inmates, who serve time in investigatory segregation without a resulting disciplinary charge, up to a maximum of twenty-eight days of back pay of the work assignment missed.[2]

■■■ Losee alleges that his due process rights were violated by the failure to receive appropriate notices while he was placed and held in investigatory segregation, and in not receiving back pay for the full forty-one days he spent in investigatory segregation. He seeks money damages for the entire time he was in investigatory segregation, alleging this was a *de facto* punitive status because officials deprived him of most of his personal property. Defendants claim that there were legitimate security reasons for the removal of Losee's personal property, and that there were no due process violations.[3]

### CONCLUSIONS OF LAW

#### I. § 1983 Claim: Due Process

■■■ An inmate's transfer to "less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1982). Inmates should reasonably anticipate being incarcerated in administrative segregation at some point during their prison term.

*Id.* A prison inmate placed in administrative segregation has the right to an informal hearing within a reasonable time. *See Jones v. Coonce*, 7 F.3d 1359, 1363 (8th Cir.1993) (detention of nine, thirteen, and fifteen days without a hearing is reasonable; detention of 30 days without a hearing is not reasonable); *Brown v. Frey*, 889 F.2d 159, 166 (8th Cir. 1989) *cert. denied*, 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990); *cf. Backstrom v. Iowa Dist. Court for Jones County*, 508 N.W.2d 705 (Iowa 1993) (due process under the federal constitution requires that prison officials provide inmate with sufficient notice to give him the opportunity to defend himself). In this case there was an ongoing investigation of a very serious security problem. Losee received notice of the purpose of his transfer from general population to administrative investigatory segregation, and received sufficient notice that his investigatory segregation status was continuing. *See Hewitt*, 459 U.S. at 477, 103 S.Ct. at 874; *Jones*, 7 F.3d at 1363–64. He was interviewed by ISP Security Department staff. He received a polygraph which resulted in his release from investigatory segregation and return to general population.

*Hewitt* held that "the inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison officials charged with deciding whether to transfer him to administrative

---

2. At the Court's request, Defendants filed with the court a copy of ISP Policy & Procedure Statement, Policy No. 85–11–04–701CR, entitled "Inmate Payroll Procedures." The relevant portions of the ISP policy states:

F. Back Pay

1. An inmate will not receive back pay or be returned to a work assignment lost due to a disciplinary decision that has been overturned or expunged because of a process or procedural error when guilt is not an issue.

2. Back pay and return of the inmate's job will usually be given if further investigation of circumstances show that the inmate was not guilty of the violation.

3. All back pay must be requested and recommended through the grievance process and approved by the Warden. *Back pay is limited to a maximum of 28 calendar days.* Requests for back pay of less than three calendar days will not be considered.

ISP Policy & Procedure Statement, Policy No. 85–11–04–701CR. (Emphasis added).

3. In his complaint, Losee does not cite to any consent decree granting him an interest in maintaining his personal property as granted to an inmate under general population status. Security Direct Emmett, however, testified as to the *Gavin* consent decree provisions. The *Gavin* decree provides that "[s]egregation prisoners shall have access to unlimited ... personal property items subject to the legitimate security requirements of the institution, the cellhouse or as set forth herein." *Gavin v. Ray*, Civ. No. 78–62–2, at 7 (S.D. Iowa 1984). A claim for contempt of a consent decree cannot be maintained through 42 U.S.C. § 1983. *DeGidio v. Pung*, 920 F.2d 525 (8th Cir.1990). The Court considers the existence of the *Gavin* decree, and finds that under the circumstances in June 1992, there were legitimate security requirements necessitating the limitation of personal property of inmates in investigative segregation. Thus, Defendants are not in contempt of *Gavin*.

segregation." *Hewitt*, 459 U.S. at 476, 103 S.Ct. at 874.

In this instance, the investigatory segregation notice was signed by Helling, and the release decision was made by Emmett. Losee did have the opportunity to present his views regarding these charges. Emmett reviewed the charges, and the then-available evidence against Losee. Therefore, due process requirements were satisfied. *See Hewitt*, 459 U.S. at 476, 103 S.Ct. at 874.

■ Although Losee's time spent in investigatory segregation was lengthy, the matter being investigated was quite serious and involved numerous inmates. The court finds that the investigatory segregation was not used as a pretext for indefinite confinement. *See Hewitt*, 459 U.S. at 477, 103 S.Ct. at 874. Therefore, the court finds that there was no violation of Losee's liberty interest by his placement or retention in investigatory segregation for forty-one days.

■ The court also finds that the status of the investigatory segregation was not punitive, although the distinctions between investigatory and summary segregation, particularly for a lifer, are quite subtle in application. However, the court finds that there are legitimate penological interests requiring the limitation of personal property by inmates residing in cellhouses 319 and 220, and that the inmates in investigatory segregation are not similarly situated to those in close management so as to receive the additional personal property that the inmates in close management receive. Further, the time spent in investigatory segregation is usually quite limited, and is generally less than thirty days.

*Turner v. Safley* provides the framework for analysis of prison regulations that infringe upon a prisoner's constitutional right. 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Specifically, the courts consider the following four factors in determining reasonableness of a prison regulation:

1.  whether there is a valid, rational connection between the prison regulation and the legitimate, neutral governmental interest used to justify it;

2.  whether there exists alternative means for prisoners to exercise the constitutional right at issue;

3.  the impact that would be caused by accommodation of the [constitutional] right on prison staff, inmates, and allocation of prison resources; and

4.  whether any alternatives exists that would fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests [i.e., whether the regulation is an "exaggerated response" to prison concerns].

*Iron Eyes v. Henry*, 907 F.2d 810, 813 (8th Cir.1990) (citing *Turner v. Safley*, 482 U.S. at 89–91, 107 S.Ct. at 2261–63); *see Thornburgh v. Abbott*, 490 U.S. 401, 414–19, 109 S.Ct. 1874, 1882–85, 104 L.Ed.2d 459 (1989); *Abdullah v. Gunter*, 949 F.2d 1032, 1035 (8th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1995, 118 L.Ed.2d 591 (1992).

Reviewing the personal property regulation under the *Turner* factors, in light of the state's interests for institutional security, protection of possible witnesses, and tranquility of the institution, leads the court to conclude that the ISP regulation restricting the amount of personal property held by inmates in investigative segregation does not unconstitutionally infringe on any of Losee's rights.

**II.  *Entitlement to Back Pay or Credit for "Time Served"***

■ There is no right to receive the full amount of back pay or a full "credit for time served". The regulation providing some back pay or credit for time served at the discretion of the warden does not establish a liberty or property interest in the full amount. *Lyon v. Farrier*, 727 F.2d 766, 769 (8th Cir.), *cert. denied*, 469 U.S. 839, 105 S.Ct. 140, 83 L.Ed.2d 79 (1984); *see also Williams v. Nix*, 1 F.3d 712, 717 (8th Cir. 1993). Therefore, there is no unconstitutional taking by not providing the full forty-one days of back pay or full credit for "time served" against any future penalties imposed.

■ A prison regulation that does not limit prison officials' discretion, does not create a liberty interest subject to due process protection. *Lyon*, 727 F.2d at 769.

[R]egulations create a protectable liberty interest only when they (1) "place substantive limitations on the exercise of official discretion;" and (2) contain " 'explicit mandatory language' " comprising " 'specific directives to the decision maker that if the regulations' substantive predicate acts are present, a particular outcome must follow.' "

*Williams,* 1 F.3d at 717 (quoting *Patchette v. Nix,* 952 F.2d 158, 160 (8th Cir.1991) (quoting *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989))). The only limitation on the Warden is the *explicit limitation* of back pay to a maximum of 28 days. ISP Policy & Procedure Statement, Policy No. 85–11–04–701CR. The credit for "time served" is solely at the discretion of prison officials since it is an unwritten policy of Emmett. As for the second prong, there is no explicit mandatory language directing the decision maker, except for the limitation on the maximum number of days that an inmate can receive back pay. Therefore, as there is no liberty interest created by either policy, there has been no unconstitutional taking by Defendants.

### III. *Qualified Immunity*

 Prison officials are entitled to qualified immunity from money damages when their actions were objectively reasonable, which is determined by whether the prison officials violated a clearly established right that a reasonably competent public official would have known he was violating. *Anderson v. Creighton,* 483 U.S. 635, 639–41, 107 S.Ct. 3034, 3038–40, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982). The unlawfulness of the prison officials' actions must be apparent. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. The Defendants here, Warden Nix, Director of Security Emmett, and Unit 319 Manager Lawson, are entitled to qualified immunity from money damages. Their placement and retention of Losee in investigatory segregation, and the failure to restore Losee's personal property, full back pay or full credit for "time served" pursuant to institution policies, did not violate any clearly established law of which a reasonable competent public official would know.

The general policy of restricting investigatory segregation inmates' possession of personal property was made after a review of the security concerns and conference with an Assistant Attorney General of Iowa; it comports with the *Turner* test. Losee received appropriate notices for due process requirements, and an informal, nonadversarial hearing during the term he spent in investigatory segregation. Therefore, Defendants are entitled to qualified immunity from money damages.

### IV. *Conclusion*

Losee has failed to establish that he was deprived of a constitutional liberty interest in the restrictions on his personal property, or by his loss of thirteen days' wages while in investigatory segregation. Further, Defendants are entitled to qualified immunity from imposition of money damages. Therefore, judgment is hereby entered in favor of Defendants.

IT IS SO ORDERED.