64 F.3d 1416
 95 Cal. Daily Op. Serv. 7156, 95 Daily Journal
D.A.R. 12,365
Terry F. NEWELL, Plaintiff-Appellee,
v.
Frank SAUSER; Lou Easter; Sharon Starr, Sgt.;
Disciplinary Committee Chairperson; Tom Reimer, Sgt.;
Robert Hartzler, Officer of the Spring Creek Correctional
Center; in their individual and official capacities,
Defendants-Appellants.
 No. 94-35243.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 12, 1995.
Decided Sept. 11, 1995.
 
 John K. Bodick, Assistant Attorney General, Anchorage, AK, for defendants-appellants.
 Susan Orlansky, Young, Sanders & Feldman, Anchorage, AK, for plaintiff-appellee.
 Appeal from the United States District Court for the District of Alaska.
 Before: WRIGHT, POOLE, and WIGGINS, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 We consider the constitutional rights of "jailhouse lawyers." Appellee Terry Newell, a prisoner at Spring Creek Correctional Center in Seward, Alaska, sued prison superintendent Frank Sauser and other prison officials pursuant to 42 U.S.C. Sec. 1983. Newell alleged that prison officials violated his civil rights by confiscating legal materials from his cell. The district court denied defendants' motion for a summary judgment and granted summary judgment in favor of Newell. Defendants now appeal interlocutorily. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291.[1] We affirm.
 
 I. Background
 
 2
 Newell was the prison law librarian during the time at issue. He had a computer in his cell, as authorized by prison officials. On March 30, 1989, Officer Robert Hartzler entered his cell under the direction of Sergeant Tom Reimer. Officer Hartzler seized approximately 59 pages of computer-generated, rough draft legal materials written by Newell on behalf of an allegedly borderline mentally retarded inmate, Reuben Johnson.
 
 
 3
 Officer Hartzler wrote and filed an Incident Report indicating that Newell had violated 22 AAC 05.400(d)(7) by possessing "anything not authorized for retention or receipt by the prisoner, and not issued through regular facility channels." On April 11, 1989, the prison's disciplinary committee found Newell guilty of violating the provision, and gave him a verbal reprimand. The committee's decision became a permanent part of Newell's record, subject to review by the parole board. On April 21, 1989, the Department of Corrections ("DOC") issued a memorandum stipulating more explicit requirements for inmates' possession of other prisoners' legal materials.
 
 
 4
 Newell appealed the disciplinary committee's decision to Superintendent Frank Sauser and Regional Director Charles Moses, both of whom denied his appeal. After Newell exhausted his state remedies, he filed this claim in federal district court. The district court adopted almost in its entirety the recommendation of the magistrate judge to grant summary judgment in favor of Newell.
 
 II. Discussion
 
 5
 The sole issue on appeal is whether defendants are entitled to qualified immunity. We review de novo a district court's decision on qualified immunity in a section 1983 action. Elder v. Holloway, --- U.S. ----, ----, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994); Trevino v. Gates, 23 F.3d 1480, 1482 (9th Cir.1994).
 
 
 6
 The qualified immunity doctrine protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In determining whether an official is entitled to qualified immunity, we (1) identify the specific right allegedly violated; (2) determine whether the right was "clearly established;" and (3) determine whether a reasonable officer could have believed that his or her conduct was lawful. Alexander v. City and County of San Francisco, 29 F.3d 1355, 1363-64 (9th Cir.1994).
 
 A. "Clearly Established" Rights
 
 7
 Newell alleged that prison officials violated his First Amendment and procedural due process rights. We apply the test articulated by the Supreme Court in Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), to determine whether the right is "sufficiently clear that a reasonable official would understand that what he is doing violates that right."[2] Id. at 639-40, 107 S.Ct. at 3038-39. It is not necessary that the specific action in question previously have been declared unconstitutional, so long as the unlawfulness was apparent in light of preexisting law. Id. at 640, 107 S.Ct. at 3039. We consider whether "the particular facts of [the] case support a claim of clearly established right." Backlund v. Barnhart, 778 F.2d 1386, 1389 (9th Cir.1985) (emphasis in original).
 
 1. First Amendment
 
 8
 Newell alleges that his First Amendment freedoms of expression and association were violated by the confiscation of the papers from his cell. His case is different from other "jailhouse lawyer" cases in that he is a prisoner dispensing, rather than seeking, legal advice.
 
 
 9
 It is well-settled that a "prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). "[A]ssisting in litigation to vindicate civil rights ... and associating for the purpose of assisting persons seeking legal redress" are "protected by the first amendment." Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir.1985).
 
 
 10
 An inmate's First Amendment right to assist other inmates with litigation was first recognized in Johnson v. Avery, 393 U.S. 483, 490, 89 S.Ct. 747, 751, 21 L.Ed.2d 718 (1969). But that case also made clear that the right could be restricted. "[T]he state may impose reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse both the giving and the seeking of assistance in the preparation of applications for relief." Id. at 490, 89 S.Ct. at 751. Restrictions may limit the time and place of such activities, id., but they must be "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); Bradley v. Hall, 64 F.3d 1276, 1281-82 (9th Cir.1995) (finding under Turner that prison "disrespect rule" as applied to inmate was not reasonably related to legitimate penological interests because it burdened his ability to file grievances). Limitations may not be imposed arbitrarily or without reason.[3]
 
 
 11
 In enacting restrictions on "jailhouse lawyers," we have implicitly adopted the proposition that there is a fundamental right to provide legal assistance. Within Johnson 's guarantee of the right of mutual inmate assistance is the derivative right, vested in "jailhouse lawyers," to provide legal assistance to others. See Adams v. James, 784 F.2d 1077, 1081 (11th Cir.1986) (a properly stated First Amendment claim by an inmate does not fail simply because the activities were conducted on behalf of others); Vaughn v. Trotter, 516 F.Supp. 886, 893 (M.D.Tenn.1980) ("The clear right to receive assistance necessarily creates the concomitant right to provide it."). "Logic demands that if inmate mutual assistance is constitutionally required, the state, through its agents, may not harass, intimidate, or otherwise interfere with those inmates who have undertaken to provide legal assistance to other inmates." Id. at 892-93.
 
 
 12
 Proper time, place, and manner restrictions could be adopted by the prison to curtail the First Amendment rights of "jailhouse lawyers." See, e.g., Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753-54, 105 L.Ed.2d 661 (1989) (application of time, place and manner analysis to a First Amendment claim). They have not, however, been enacted in this particular case. The provision under which Newell was disciplined, 22 AAC 05.400(d)(7), was not a reasonable restriction on "jailhouse lawyers." At the time of the incident, Newell was acting in his capacity as the designated law librarian, and was even allowed a computer in his cell. He was assisting an allegedly mentally handicapped inmate, the very type of person "jailhouse lawyers" were meant to aid. See Vaughn, 516 F.Supp. at 892 (the right of mutual legal assistance among inmates is ultimately to protect and aid "the blind, illiterate, [and] mentally handicapped"). Thus, Newell's right to have legal materials, including those of another inmate, in his cell was clearly established.
 
 2. Due Process
 
 13
 Newell has also alleged a due process violation for being disciplined and having his possessions removed without having committed a violation of known policy or procedure. It is axiomatic that due process requires fair notice of prohibited conduct before a sanction can be imposed. This principle applies within the prison setting. See, e.g., Williams v. Nix, 1 F.3d 712, 716 (8th Cir.1993) (internal citations omitted).
 
 
 14
 Title 22 AAC 05.400(d)(7) makes no reference to the type of work Newell was conducting, or to "jailhouse lawyers" in general. No prison policy or procedure was in place to govern Newell's conduct at the time Officer Hartzler seized the legal papers.[4] It was not until 22 days after the incident, on April 21, 1989, that a specific policy was enacted to detail explicitly what legal materials prisoners could keep in their cells. This after-the-fact provision for "Prisoner Personal Property" indicates that the rule was imposed arbitrarily and without reason against Newell.
 
 
 15
 Prison officials may make legitimate policies for the "preservation of internal order and discipline, the maintenance of institutional security, and rehabilitation of prisoners." Storseth, 654 F.2d at 1355 (citing Procunier v. Martinez, 416 U.S. 396, 412, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974)). However, the relevant policy in March of 1989 did not address any of those goals explicitly, and Newell's actions in assisting Johnson did not threaten those goals. Therefore, the application of 22 AAC 05.400(d)(7) to Newell, absent a specific rule regulating his conduct, also violated his clearly established right to due process.
 
 B. The Belief of a Reasonable Officer
 
 16
 Even where a constitutional violation has occurred, an officer will be immune from suit if he or she "could have reasonably believed that his particular conduct was lawful." Romero, 931 F.2d at 627. No reasonable officer in this case could have believed on March 30, 1989 that his confiscation of the legal materials was lawful. As noted by the magistrate's recommendation, the uncontradicted evidence supplied by the plaintiff indicates that departmental policy as of October 5, 1988 permitted "jailhouse lawyers" to possess legal materials belonging to other inmates. Moreover, the 1991 Alaska Department of Corrections Inmate Handbook indicated that prisoners had, without restriction, the "right to receive assistance from the law librarian" to help "prepare ... legal pleadings." A reasonable officer would have known that confiscation of legal materials from the cell of the designated law librarian, equipped with a computer to provide legal assistance to others, was unlawful.[5]
 
 III. Conclusion
 
 17
 The district court correctly held that defendants were not entitled to qualified immunity because Newell alleged a violation of clearly established constitutional rights of which a reasonable official should have known. Therefore, the grant of summary judgment in favor of Newell is AFFIRMED.
 
 
 
 [1]
 "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. Sec. 1291 notwithstanding the absence of a final judgment." Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985)
 
 
 [2]
 Defendants have characterized Newell's claim as a right of access to courts. It is well-established that all prisoners have a constitutional right of access to the courts, including the right of access to adequate law libraries or legal assistance. See Bounds v. Smith, 430 U.S. 817, 821, 828, 97 S.Ct. 1491, 1494, 1498, 52 L.Ed.2d 72 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir.1995) (right of access "precludes prison authorities from penalizing a prisoner for exercising those rights."). This is not a right of access case because Newell is not seeking the access for himself, but for a fellow prisoner
 
 
 [3]
 Defendants' reliance on Storseth v. Spellman, 654 F.2d 1349 (9th Cir.1981) is misplaced because that case merely held that a prisoner does not have a right to pick the "jailhouse lawyer" of his choice. The case is silent regarding the rights of someone who is seeking to assist another
 
 
 [4]
 We do not have to reach the factual question of whose papers were in the cell, because the relevant due process inquiry is one of notice
 
 
 [5]
 Further, a reasonable DOC officer would have known his conduct was unlawful due to a prior incident regarding Newell. In late 1988, a DOC staff member reported that Newell was helping an inmate at the Cook Inlet Pretrial Facility. The supervising DOC staff member disposed of the incident, writing that the "[c]ourts have ruled that an offender may assist another."