# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2747

_____

Gerald E. Booker, individually and on behalf of all others similarly situated

*Plaintiff - Appellant*

v.

The City of Saint Paul, a municipal corporation

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 14, 2014
Filed: August 7, 2014

_____

Before WOLLMAN, MELLOY, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

The City of St. Paul ("the City") seized Gerald Booker's vehicle following Booker's fourth arrest for driving while impaired. If Booker wished to contest the seizure, Minnesota Stat. § 169A.63, Subdiv. 8(b) required Booker to file a challenge to the forfeiture within thirty days. Booker waited more than seven months to challenge the forfeiture. When he did not succeed in retrieving his vehicle, Booker filed this 42 U.S.C. § 1983 action, alleging that the state forfeiture proceeding

violated his due process rights under the Fifth and Fourteenth Amendments and that the statute sanctioned unreasonable seizures of property in violation of the Fourth Amendment. The district court[1] granted summary judgment for the City. We affirm.

I.

On May 30, 2011, a St. Paul police officer arrested Gerald Booker for driving under the influence. Booker's car was towed to the St. Paul impound lot. Because the arrest was Booker's fourth driving while impaired offense within ten years, it qualified as a violation of Minnesota Stat. § 169A.24 (2009) (first-degree driving while impaired) and subjected his vehicle to forfeiture under Minnesota Stat. § 169A.63, Subdiv. 1(e)(1) (2009) (listing first-degree driving while impaired as a designated offense). The state forfeiture statute provides that "[a]ll right, title, and interest in a vehicle subject to forfeiture under this section vests in the appropriate agency upon commission of the conduct resulting in the designated offense." § 169A.63, Subdiv. 3. On November 10, 2011, Booker pleaded guilty to driving while impaired. He received seven years probation.

At the time of the arrest, the police officer gave Booker a Notice of Seizure and Intent to Forfeit. The notice provides, in part:

> Forfeiture of the property is automatic unless within 30 days of receipt of this form you demand a judicial determination of this matter. The procedure for obtaining a judicial determination is set out in Minnesota Statutes, Section 169A.63, Subdivision 8 on the reverse side of this form. IF YOU DO NOT DEMAND JUDICIAL REVIEW EXACTLY AS PRESCRIBED IN MINNESOTA STATUTES SECTION 169A.63, SUBDIVISION 8, YOU LOSE THE RIGHT TO A JUDICIAL DETERMINATION OF THIS FORFEITURE AND YOU LOSE ANY

---

[1] The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

RIGHT YOU MAY HAVE TO THE ABOVE DESCRIBED PROPERTY.  YOU MAY NOT HAVE TO PAY THE FILING FEE FOR THE DEMAND IF DETERMINED YOU ARE UNABLE TO AFFORD THE FEE.

The back of the notice contains Minn. Stat. § 169A.63, Subdiv. 8(d)–(f).[2] Subdivision 8(d) states that the person must file a civil complaint with the court administrator in the county where the seizure occurred.  The complaint "must be captioned in the name of the claimant as plaintiff and the seized vehicle as defendant, and must state with specificity the grounds on which the claimant alleges the vehicle was improperly seized, the claimant's interest in the vehicle seized, and any affirmative defenses the claimant may have."  Minn. Stat. 169A.63, Subdiv. 8(e) (2009).

Booker did not file a complaint within thirty days, which would have been by June 30, 2011.  Booker claims that he called the St. Paul County Courthouse to ask how to retrieve his vehicle.  Booker says he did not pursue the matter further because he could not afford the applicable filing fee, which was $320.  In January 2012, over seven months after the seizure, Booker had an attorney contact the City to request the return of Booker's vehicle.[3]

---

[2]Minn. Stat. § 169A.63 has been amended since Booker's arrest, and, among other changes, the statute now allows sixty days to challenge the forfeiture instead of thirty days.  Because Booker does not challenge the number of days provided to request a judicial determination, we find the amendments to be immaterial to Booker's claims.  In addition, Booker himself does not base this appeal on the statute as amended.

[3]On July 8, 2011, a St. Paul police officer sent a Notice of Seizure and Intent to Forfeit Vehicle letter to AmeriCredit, a company with a security interest in Booker's vehicle.  AmeriCredit submitted a Petition for Relief from Forfeiture, and the vehicle was released to AmeriCredit on April 6, 2012.  AmeriCredit sold the vehicle at an auction for a loss.

When the City refused to return the car, Booker brought suit in federal court, alleging that Minn. Stat. § 169A.63 violates his due process rights under the Fifth and Fourteenth Amendments. He also alleges the vehicle forfeiture was an unreasonable seizure under the Fourth Amendment.[4] Both sides moved for summary judgment, and the district court granted the City's motion on August 6, 2013. Booker appeals.

## II.

We review de novo the constitutionality of a statute. United States v. Prior, 107 F.3d 654, 658 (8th Cir. 1997). In addition, we "review a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences that can be drawn from the record." Johnson v. Wells Fargo Bank, N.A., 744 F.3d 539, 541 (8th Cir. 2014). Summary judgment is appropriate if there are no genuine issues of material fact, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and the moving party is entitled to judgment as a matter of law, Fed. R. Civ. P. 56.

## A. Due Process

Booker argues that because Minn. Stat. § 169A.63 does not provide an automatic pre-seizure hearing, the government must provide an automatic and prompt post-deprivation hearing after seizing a vehicle. The statute allows a person to request a "judicial determination" by filing a civil complaint with the court administrator in the county where the seizure occurred. Minn. Stat. § 169A.63(d). Booker argues that this provision is not enough to provide due process. He also argues that the $320 filing fee and wait time prior to the hearing are constitutionally

---

[4]Before the district court, Booker alleged violations of the Minnesota Constitution. He also alleged that the lack a pre-deprivation hearing violated his constitutional rights. He does not raise these claims on appeal, and they are waived.

-4-

unreasonable. The City argues that the availability of a judicial determination alone satisfies due process. In addition, the City points out that Booker had a probable cause hearing on his DWI offense almost immediately after his arrest, which the City suggests satisfies due process even though the hearing is not specifically labeled a "post-deprivation" hearing and does not discuss the forfeited property. The district court determined that the "judicial determination" proceeding provided in the statute was an adequate post-deprivation hearing and that the statute was constitutional.

"Procedural due process imposes constraints on governmental decisions" that, among other things, deprive individuals of their property. Mathews v. Eldridge, 424 U.S. 319, 332 (1976). Generally, "due process requires that a hearing before an impartial decisionmaker be provided at a meaningful time, and in a meaningful manner." Coleman v. Watt, 40 F.3d 255, 260 (8th Cir. 1994). However, "[w]ithin this general framework different situations may require different specific procedures." Riggins v. Bd. of Regents of Univ. of Neb., 790 F.2d 707, 712 (8th Cir. 1986). To determine what kind of process is due, courts balance three factors: "(1) the nature and weight of the private interest affected by the challenged official action; (2) the risk of an erroneous deprivation of such interest as a result of the summary procedures used; and (3) the governmental function involved and state interests served by such procedures, as well as the administrative and fiscal burdens, if any, that would result from the substitute procedures sought." Coleman, 40 F.3d at 260 (citing Mathews, 424 U.S. at 334). These factors are used to evaluate the adequacy of process offered in forfeiture proceedings. See Krimstock v. Kelly, 306 F.3d 40, 60 (2d Cir. 2002).

### 1. Private Interest

Booker asserts an interest in retaining possession of his vehicle, both as his property and as a means of transportation. Booker cites Coleman for the proposition that a seven-day delay for a post-deprivation hearing can be an unconstitutional

length of time to deprive a person of access to his or her vehicle.  In Coleman, the court weighed the three Mathews factors to determine if a city's seizure of a vehicle constituted a denial of procedural due process.  Coleman, 40 F.3d at 260.  An officer stopped the plaintiff's vehicle because the plaintiff had committed several traffic offenses.  Id. at 258.  The plaintiff could not provide proof that he had properly registered his vehicle (even though he had), so the officer seized and impounded the plaintiff's vehicle.  Id.  Seven days elapsed before the plaintiff was able to appear before a judge and present proof that he had, indeed, properly registered the vehicle. Id.  After an eight-week delay, the plaintiff ultimately had his car returned to him.  Id. On appeal, this court reversed the district court's grant of the municipality's motion to dismiss, finding that the resolution of several facts could show that the seven-day delay prior to the first hearing violated due process.  Id. at 262. This court noted, however, that if the plaintiff "had actual notice of the availability of an earlier opportunity to be heard but sat on his rights for several days before requesting a hearing, then [the plaintiff] cannot complain that the City failed to provide a constitutionally prompt hearing." Id.

Booker's reliance on Coleman is misplaced for this very reason—Booker "sat on his rights" for seven months before requesting a hearing, so he cannot now "complain that the City failed to provide a constitutionally prompt hearing." See id. Booker alleges, without support, that even if he had requested a hearing within the statutorily prescribed thirty days, he would have had to wait as long as five months to two years to get a hearing date on the court's calendar.  The district court acknowledged Booker's lack of evidence on this point, stating: "Plaintiff assumes that the delay would have taken five months, but because he never initiated the judicial review process, the record does not establish the length of the delay."  Booker has not provided this court with any evidence that there would be a delay after requesting a judicial determination or that the delay would have been unconstitutionally lengthy. See Riggins, 790 F.2d at 711 ("[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has

simply refused to avail himself of [it]." quoting Bohn v. Dakota Cnty., 772 F.2d 1433, 1441 (8th Cir. 1985)).

To the extent that Booker brings a facial challenge to the Minnesota vehicle forfeiture statute, he must "establish that no set of circumstances exist[] under which the [statute] would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987); see also id. (noting that a facial challenge to a statute is "the most difficult challenge to mount successfully"). Booker appears to raise a facial claim based on the plight of innocent owners who may lend a car to someone who then breaks the law and subjects the car to forfeiture. This argument is unavailing because the Minnesota statute has exceptions for innocent owners to retrieve their vehicles in a timely manner. See, e.g., Minn. Stat. § 169A.63, Subdiv. 7(d) ("Limitations on vehicle forfeiture"), Subdiv. 9(g) (providing that if the innocent owner meets the requirements under subdivision 7, then "the vehicle must be returned immediately"); see also Krimstock, 306 F.3d at 57 n.19 (listing the Minnesota statute as one that provides "for affirmative defenses by innocent owners or make proof of the owners' culpable knowledge part of the seizing authority's burden"). An innocent owner is only temporarily inconvenienced by the seizure of the vehicle.[5]

## 2. Risk of Erroneous Deprivation

The second Mathews consideration, risk of erroneous deprivation, is uncompelling. As the City points out, a driver arrested for first-degree impaired driving appears before a court at a preliminary hearing and the prosecutor must establish that probable cause exists for the underlying DWI offense. For DWI cases, it is generally straightforward to establish probable cause because the defendant typically has submitted to a field sobriety, breathalyser, or blood sample test. See

---

[5]We need not address other potential facial challenges not clearly raised in this case.

Krimstock, 306 F.3d at 62–63 ("We acknowledge that the risk of erroneous seizure and retention of a vehicle is reduced in the case of a DWI owner-arrestee, because a trained police officer's assessment of the owner-driver's state of intoxication can typically be expected to be accurate."). Booker underwent a blood test, which determined that his BAC was over the legal driving limit. The City points out that if a similar hearing were held on the City's probable cause determination that the vehicle was subject to forfeiture, the City would present the exact same evidence as it does in the criminal preliminary hearing. Because Booker's offense was clearly one subject to Minnesota's vehicle forfeiture statute, and because a preliminary hearing determined that probable cause existed to prosecute the DWI, we note that it would be the rare case that the City's seizure would be erroneous. And of course, if the City's seizure of the vehicle was erroneous, a person could immediately demand a judicial determination on the validity of the seizure.

### 3. Government Interests and Substitute Procedures

The City argues that the vehicle forfeiture statute protects public safety by keeping intoxicated drivers off the road. Booker argues that public safety is not a real interest because the intoxicated driver has already been arrested by the time the car is seized. We conclude the City's interest in public safety is substantial. A repeat DWI offender, such as Booker, is demonstrably unlikely to be deterred from driving even after an arrest or the loss of a driver's license. As such, seizing the vehicle from a four-time offender is a legitimate means of keeping dangerous drivers off the road. See Dixon v. Love, 431 U.S. 105, 114–15 (1977) (noting that a statute that, among other things, is "designed to keep off the roads those drivers who are unable or unwilling to respect traffic rules and the safety of others" comports with due process because the state has an "important public interest in safety on the roads and highways, and in the prompt removal of a safety hazard"); Krimstock, 306 F.3d at 66 n.28 ("A claimant's proven history of persistent drunkenness or repeated DWI violations, however, might justify a fact-finder in denying release of the vehicle[.]").

Turning to Booker's requested substitute procedures—a prompt post-deprivation hearing with no filing fee—we conclude that the possible impact on the City would be burdensome. Booker's substitute procedures would include holding an automatic probable cause hearing for every vehicle impounded. The potential costs include court time, a judge's time, and a prosecutor's time, as well as the property owner's time, who may or may not wish to be there and who may or may not retain an attorney.

### 4. Balancing the Mathews Factors

After looking at the three Mathews factors, we are persuaded that the City's current process—allowing those affected by vehicle forfeiture to request a judicial determination if they believe the forfeiture was erroneous—is sufficient to satisfy due process. In addition, we note that the district court pointed out that analyzing the Mathews factors "is somewhat of a moot exercise because the statute does, in fact, provide for a post-seizure hearing." Booker's argument that there should not be a filing fee is without merit because the fee can be waived for those who cannot afford it, and if the party is successful, the filing fee is returned. See Minn. Stat. § 169A.63, Subdiv. 8(c)(3), 9(h). Simply put, process was made available to Booker, and he failed to take advantage of that opportunity. See Krentz v. Robertson, 228 F.3d 897, 904 (8th Cir. 2000) (finding that a plaintiff who was "aware of the available administrative procedures, yet did not pursue relief thereunder" had waived due process). The Minnesota Statute comports with due process.

### B. Fourth Amendment

Booker also brings his suit pursuant to the Fourth Amendment, claiming that the vehicle forfeiture statue constitutes an unreasonable seizure of property. "The reasonableness standard of the Fourth Amendment applies to any seizure by the government in any context." Coleman, 40 F.3d at 263; see Krimstock, 306 F.3d at

50 (explaining the Fourth Amendment's role in the due process analysis, noting that "the government, once challenged," must establish probable cause for the initial seizure or offer post-seizure evidence to justify the continued impoundment of the vehicle).

Booker's vehicle was forfeited because he broke the law, and the seizure was prolonged because he did not request a judicial determination. Booker claims that even if he had requested one, his vehicle would have been retained by the City for five months before he received a hearing. As discussed above, Booker presents no evidence of this length of time other than his own unsupported assertion. In addition, Booker makes no claim of innocence or wrongful seizure, and he therefore cannot show any prejudice resulted from any possible delay. See Laase v. Cnty. of Isanti, 638 F.3d 853, 857 (8th Cir. 2011) ("[E]ven if a demand for judicial determination [under the Minnesota statute] is filed, forfeiture is automatic upon a determination that the owner committed a designated offense and has failed to prove an affirmative defense."). Booker's vehicle was lawfully subject to forfeiture, and given Booker's conviction for a fourth DWI, he was not entitled to get it back. Therefore, even if there hypothetically could have been a prolonged seizure had Booker requested a judicial determination within thirty days, Booker cannot show he suffered any harm from the City's retention of his vehicle because the City was then the rightful owner.

## III.

Booker was arrested for a fourth-offense DWI, which subjected his vehicle to forfeiture. The Minnesota vehicle forfeiture statute provided for an opportunity to contest the forfeiture by demanding a judicial determination. Booker did not do so. Accordingly, we affirm the district court's grant of summary judgment to the City.

_____