# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2703
_____

Gary Hughes; Arash Yarpezeshkan; David Mazgaj

*Plaintiffs - Appellants*

Edward G. Robinson

*Plaintiff*

James Louis Sparks; Jerry Northrup

*Plaintiffs - Appellants*

Daniel Ray French

*Plaintiff*

Jeffrey V. Stimpson; Roger L. Lee; Krisanne M. Duhaime; Gerald R. Duhaime;
Susan M. Dumbaugh

*Plaintiffs - Appellants*

v.

City of Cedar Rapids, Iowa; Gatso USA, Inc.

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: September 20, 2016
Filed: November 2, 2016

_____

Before LOKEN, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge

A group of drivers sued the City of Cedar Rapids and Gatso USA, Inc., arguing that the Automatic Traffic Enforcement (ATE) system violates federal and state law. The district court dismissed the drivers' claims. Having jurisdiction under 28 U.S.C. § 1291, this court affirms in part, reverses in part, and remands.

## I.

In 2011, the City, by ordinance, authorized an ATE system. **Cedar Rapids, Iowa Mun. Code** § 61.138. The City contracted with Gatso to install and operate the system. When a vehicle speeds or runs a red light, an ATE camera takes an image. Gatso then mails a Notice of Violation to the vehicle owner. The drivers sued in Iowa state court, arguing that the ATE system violates their right to procedural due process, their fundamental right to travel, Iowa Code § 602.6101, and causes unjust enrichment for the City and Gatso. They removed the case to federal court and moved to dismiss.

The district court dismissed for lack of Article III standing: Gary Hughes and David L. Mazgaj's claims, and the procedural-due-process claims of Edward G. Robinson, James L. Sparks, Jeffrey L. Northrup, Arash C. Yarpezeshkan, Daniel R. French, and Jeffrey V. Stimpson. For the drivers with standing, the district court dismissed for failure to state a claim. On appeal, the drivers contend that the district court erred by dismissing their complaint and not remanding to state court those claims dismissed for lack of standing.

## II.

According to the City and Gatso, drivers Hughes, Mazgaj, and Roger L. Lee lack Article III standing for their claims. This court reviews standing determinations de novo. *Plymouth Cty., Iowa v. Merscorp, Inc.*, 774 F.3d 1155, 1158-59 (8th Cir. 2014).

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. **U.S. Const.** art. III, § 2. To establish Article III standing, a plaintiff must show 1) an injury in fact, 2) a sufficient causal connection between the injury and the conduct complained of, and 3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The party invoking federal jurisdiction has the burden to establish these elements. *Id.*

### A.

The City and Gatso object to Hughes's Article III standing, claiming he has no injury in fact. Hughes asserts a "fear that, as a Vehicle Owner regularly using the roads in Cedar Rapids, [he] may be subject to . . . civil liability resulting from the operation of the City's fixed or mobile ATE system's cameras." He has not received a Notice of Violation. A person threatened with law enforcement may challenge the law "under circumstances that render the threatened enforcement sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014). The person need not demonstrate it is "literally certain that the harms they identify will come about." *Clapper v. Amnesty Int'l. USA*, 133 S. Ct. 1138, 1150 n.5 (2013). Standing may be based on a "substantial risk" of harm that prompts plaintiffs to "reasonably incur costs to mitigate or avoid that harm." *Id.*

-3-

Hughes does not allege that he has incurred any costs to mitigate or avoid the threat of ATE enforcement, or that the threat of an ATE citation is sufficiently imminent. Hughes does not have standing.

## B.

The City and Gatso claim Mazgaj has no injury in fact. His wife received the Notice of Violation, but Mazgaj was driving the car (which she owned). He asserts third-party standing on behalf of his wife. "[T]here may be circumstances where it is necessary to grant a third-party standing to assert the rights of another." *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004). For example, a plaintiff may show "a close relationship with the person who possesses the right" and "a hindrance to the possessor's ability to protect [her] own interests." *Id.* at 130.

Mazgaj fails to show a hindrance to his wife's ability to protect her own interests. He does not have third-party standing. Mazgaj believes he need not assert third-party standing. But then his claim is just a "generally available grievance . . . seeking relief that no more directly and tangibly benefits him than it does the public at large." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013). Mazgaj does not state an Article III case or controversy.

## C.

According to the City and Gatso, Lee's claims are not ripe for adjudication. "[T]he ripeness inquiry requires the examination of both 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Pub. Water Supply Dist. No. 10 v. City of Peculiar*, 345 F.3d 570, 572-73 (8th Cir. 2003), *quoting Abbott Labs v. Gardner*, 387 U.S. 136, 148 (1967). Fitness depends on whether a case needs further factual development. *Id.* Hardship requires that the plaintiff "has sustained or is immediately in danger of sustaining some direct injury

-4-

as the result of the challenged statute or official conduct." *Id.* The plaintiff "must necessarily satisfy both prongs to at least a minimal degree." ***Neb. Pub. Power Dist. v. MidAmerican Energy Co.***, 234 F.3d 1032, 1039 (8th Cir. 2000).

Lee satisfies both prongs. He was found guilty of violating the ordinance; no further factual development is necessary. Lee has the hardship of citation and the cost of litigation. Lee's claims are ripe.

D.

Hughes and Mazgaj reason that if they lack Article III standing, the district court must remand their claims to state court. *See* **28 U.S.C. § 1447(c)** ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). The City and Gatso counter that the district court exercised supplemental jurisdiction and properly dismissed the claims for lack of Article III standing.

A court may not exercise supplemental jurisdiction over a claim if the claimant lacks Article III standing. ***DaimlerChrysler Corp. v. Cuno***, 547 U.S. 332, 351-52 (2006) ("What we have never done is . . . permit a federal court to exercise supplemental jurisdiction over a claim that does not itself satisfy those elements of the Article III inquiry, such as constitutional standing . . . ."). If a case is removed from state court, those claims lacking Article III standing shall be remanded. *See* ***Shaw v. Marriot Int'l, Inc.***, 605 F.3d 1039, 1044 (D.C. Cir. 2010) (remanding some claims where after removal, some plaintiffs, but not all, lacked standing); ***Lee v. American Nat'l Ins. Co.***, 260 F.3d 997, 1006 (9th Cir. 2001) (same).

*Wisconsin Department of Corrections v. Schacht*, 524 U.S. 381 (1998), is inapplicable here. There, plaintiff argued that if the "district court lacks subject matter jurisdiction over *any* claim, then *every* claim, i.e., the entire case, must be

remanded to the state court." *Id.* at 391 (emphasis in original). The Court disagreed, holding that remand of an entire case was improper where the court had jurisdiction over some related claims. *Id.* Here, the drivers do not argue that *every* claim in the case should be remanded; they seek remand of only those claims that lack Article III standing.

The district court never had jurisdiction of Hughes and Mazgaj's claims. *See DaimlerChrysler*, 547 U.S. at 351-52. Their claims should be remanded to state court. *See Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1032 (8th Cir. 2014) (finding that where a state case is removed to federal court but lacks Article III standing, the proper remedy is remand to state court).

III.

A.

The district court found that drivers Robinson, Sparks, Northrup, Yarpezeshkan, French, and Stimpson lack standing to bring a procedural-due-process claim, because they chose not to participate in the process they attack. The district court invoked *Shavitz v. City of High Point*, 270 F. Supp. 2d 702, 711 (M.D.N.C. 2003): where the plaintiff has not "availed himself of the process Defendants have provided, Plaintiff has not suffered a concrete and particularized injury as a result of allegedly deficient process and therefore has no standing to challenge it."

Unfortunately, *Shavitz* confuses the injury-in-fact requirement with the stating-a-valid-claim requirement. Determining the adequacy of the process is generally a merits question, even if a plaintiff does not use the process provided. *See Cochran v. Illinois State Highway Auth.*, 828 F.3d 597, 600-01 (7th Cir. 2016) (addressing, at the merits stage, the argument "the hearing to which [plaintiff] was entitled, but did not request, would not have provided him with a meaningful opportunity to be

-6-

heard."). *See also* **Sevin v. Parish of Jefferson**, 632 F. Supp. 2d 586, 599 (E.D. La 2008) ("[T]his Court would be remiss if it incorporated an assessment of the adequacy of . . . adjudication procedures, or the plaintiff's failure to take advantage of those procedures, into its standing analysis."). Otherwise, in order to have standing, a plaintiff would always have to show the inadequacy of the due process—the central claim.

The district court here addressed the substance of the due process argument as part of the standing analysis. The allegations that the procedure is inadequate—even if drivers shun it—sufficiently establishes an injury in fact for Article III standing.

These six drivers also satisfy the causation and redressability requirements. The drivers' alleged injury is inadequate process directly traceable to the City and Gatso. If the court awards damages, their claims are redressed. *See* **Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.**, 528 U.S. 167, 174 (2000). Drivers Robinson, Sparks, Northrup, Yarpezeshkan, French, and Stimpson have standing to bring procedural-due-process claims.

B.

To demonstrate a procedural-due-process violation, the drivers must show a deprivation of life, liberty, or property without sufficient process. **Clark v. Kansas City Mo. Sch. Dist.**, 375 F.3d 698, 701 (8th Cir. 2004). To determine the kind of process due, courts balance three factors:

> 1) the nature and weight of the private interest affected by the challenged official action; 2) the risk of an erroneous deprivation of such interest as a result of the summary procedures used; and 3) the governmental function involved and state interests served by such procedures, as well as the administrative and fiscal burdens, if any, that would result from the substitute procedures sought.

***Booker v. City of Saint Paul***, 762 F.3d 730, 734 (8th Cir. 2014), *citing **Mathews v. Eldridge***, 424 U.S. 319, 334 (1976).  This court reviews de novo the grant of a motion to dismiss for failure to state a claim, taking all facts in the complaint as true.  ***Sparkman Learning Ctr. v. Ark. Dept. of Human Servs.***, 775 F.3d 993, 997 (8th Cir. 2014).

The drivers' claim fails at the second factor, "the risk of an erroneous deprivation . . . as a result of the summary procedures used."  ***Booker***, 762 F.3d at 734.  The drivers attack the administrative process as a "rubber stamp" and a "sham of a process."  A court need not accept conclusory allegations.  *See **Ashcroft v. Iqbal***, 556 U.S. 662 (2009) (holding that a pleading is insufficient if it contains mere labels and conclusions or tenders naked assertions devoid of further factual enhancement).  *See also **Hughes v. City of Cedar Rapids***, 112 F. Supp. 3d 817, 847-48 (N.D. Iowa. 2015) (noting the two ways, plus appeals, to challenge an ATE citation).

The drivers also allege that the process is inadequate because some cameras are not calibrated to  Iowa Department of Transportation (IDOT) standards.  The drivers claim that the IDOT standards are "a standard applicable to their claims."  The drivers cite no authority that a state agency's regulations are the standard for procedural due process.  *See **Williams v. Nix***, 1 F.3d 712 (8th Cir. 1993) ("It is clear, however, that, without more, the mere violation of a state law or rule does not constitute a federal due process violation.").  The district court correctly ruled that  "the ATE Program may comply with procedural due process even if it is not compliant with IDOT regulations."  The drivers do not state a violation of their procedural-due-process rights.

IV.

The drivers next focus on substantive due process.  "To establish a substantive due process violation, [plaintiff] must demonstrate that a fundamental right was

violated and that the conduct shocks the conscience." ***Akins v. Epperly***, 588 F.3d 1178, 1183 (8th Cir. 2009), *citing **Moran v. Clarke***, 296 F.3d 638, 651 (8th Cir. 2002) (Bye, J., concurring).

A.

The right to travel is a fundamental right. ***United States v. Guest***, 383 U.S. 745, 757 (1966). It has three different components: 1) the right of a citizen of one state to enter and leave another state, 2) the right to be a welcome visitor, not an unfriendly alien, when temporarily present in another state, and 3) for those travelers who become permanent residents, the right to be treated like other citizens of that state. ***Sanez v. Roe***, 526 U.S. 489, 500-01 (1999). The first two components are at issue here.

1.

The first component protects the "right to go from one place to another." ***Id.*** at 500. If a statute does not burden entry into or exit from the state, then it does not directly impair the right to free interstate movement. ***Id.*** *See **Edwards v. California***, 314 U.S. 160 (1941) (holding unconstitutional a state law making it illegal for a person to bring out-of-state, indigent persons into the state). The right to travel does not prevent toll roads, speed limits, or travel-related taxes. *See **Matsuo v. United States***, 586 F.3d 1180, 1183 (9th Cir. 2009) ("[N]ot everything that deters travel burdens the fundamental right to travel. States and the federal government would otherwise find it quite hard to tax airports, hotels, moving companies, or anything else involved in interstate movement.").

The drivers allege that the ATE system infringes their right to travel because it is a "speed trap" affecting the choices of interstate travelers. A state may enforce conventional traffic regulations—even if they deter travel—without violating the

fundamental right to travel. *See Lutz v. City of York*, 899 F.2d 255, 270 n.41 (3d Cir. 1990).[1]

2.

The Privileges and Immunities Clause is the basis for the second component of the right to travel, "bar[ring] discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." *Sanez*, 526 U.S. at 502. "[A] purely intrastate restriction does not implicate the right of interstate travel, even if it is applied intentionally against travelers from other States, unless it is applied *discriminatorily* against them." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 277 (1993) (emphasis in original). For the Clause to apply, the discriminatory treatment must burden out-of-state residents. *United Bldg. & Constr. Trades Council v. Mayor & Council of Camden*, 465 U.S. 208, 218 (1984) ("As an initial matter, the court must decide whether the ordinance burdens one of those privileges and immunities protected by the Clause.").

The drivers fail to allege discriminatory enforcement against out-of-state drivers. They state that the ATE system issues more citations to out-of-state drivers than to in-state drivers. However, they do not allege that the ATE system issues

---

[1]The drivers assert they have a right to intrastate travel under the Iowa Constitution. They cite no Iowa law supporting this claim. *Cf. Scheckel v. State*, 838 N.W.2d 870, 2013 WL 4504919, *2 (Iowa Ct. App. 2013) (unpublished table opinion) (stating that "the right to travel does not give an individual the right to travel at their discretion with disregard to the traffic laws"); *State v. Hartog*, 440 N.W.2d 852, 856 (Iowa 1989) (holding mandatory seat belt law did not infringe upon a fundamental right); *Veach v. Iowa Dep't of Transp.*, 374 N.W.2d 248, 249 (Iowa 1985) (holding that a regulation denying work permits to individuals whose drivers' licenses had been suspended did not implicate a fundamental right).

citations discriminatorily based on whether a vehicle has in-state or out-of-state registration. *See **Bray***, 506 U.S. at 277. The drivers note that the ATE system allows out-of-state residents to contest, by mail, a Notice of Violation. This convenience for non-residents does not burden the right to travel. *See **United Bldg.***, 465 U.S. at 218. The drivers do not allege a violation of the right to travel under the Privileges and Immunities Clause.

The drivers do try to state a violation of substantive due process, claiming that the challenged conduct shocks the conscience. *See **Akins***, 588 F.3d at 1183. To the contrary, the City and Gatso's acts are not "so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience." ***Christiansen v. W. Branch Cmty. Sch. Dist.***, 674 F.3d 927, 937 (8th Cir. 2012). The City and Gatso's actions do not otherwise offend judicial notions of fairness.

B.

The drivers posit an Equal Protection Clause violation of their fundamental right to travel. "[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." ***Mass. Bd. of Ret. v. Murgia***, 427 U.S. 307, 312 (1976). The drivers admit that they are not members of a suspect class, and as discussed, the ordinance does not burden their fundamental right to travel. When no fundamental right or suspect class is at issue, a challenged law must pass the rational basis test. ***Reno v. Flores***, 507 U.S. 292, 301 (1993).

The drivers attack the rational basis of the ordinance. In rational basis review, "legislative choice is not subject to courtroom fact-finding and may be based on

rational speculation unsupported by evidence or empirical data." ***FCC v. Beach Commc'ns, Inc.***, 508 U.S. 307, 313 (1993). "It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." ***Williamson v. Lee Optical***, 348 U.S. 483, 487-88, (1955).

The ordinance passes rational basis. The City could rationally conclude that the ATE system would reduce the number of people violating traffic laws. *See* ***Idris v. City of Chicago***, 552 F.3d 564, 566 (7th Cir. 2009) (A "system that simultaneously raises money and improves compliance with traffic laws has much to recommend and it cannot be called unconstitutionally whimsical"); ***Hughes***, 112 F. Supp. 3d at 842-43 (rejecting an equal-protection challenge to distinctions based on licence-plate location and types of vehicles in the database). There is no Equal Protection Clause violation here.

C.

The drivers emphasize pending state-court litigation about the ATE system. In March 2015, IDOT ruled that some traffic cameras in the City should be removed. IDOT found that some cameras were "beyond the area of concern" or placed too close to a speed-reduction sign. **Evaluation of Cedar Rapids Automated Traffic Enf't Report, Iowa Dep't of Transp., (2015)** *available at* **http://www.iowadot.gov/ ATEReports/pdfs/Final%20Cedar%20Rapids%20ATE%20Response.pdf**. The City's appeal is still pending in Iowa state court. ***City of Muscatine v. Iowa Dep't of Trans.***, 05771 CVCV049988 (Polk Cty. Dist. Ct. filed June 10, 2015).

According to the drivers, IDOT's ruling shows that the ordinance does not have a rational basis. Even if the ordinance did violate IDOT regulations, a "violation of state law does not by itself constitute a violation of the Federal Constitution."

*Nordlinger v. Hahn*, 505 U.S. 1, 25 (1992).  The district court properly determined that the ordinance would survive rational basis even if it did violate IDOT rules.

The drivers allege that the violation of IDOT rules demonstrates a claim under the Iowa Constitution.  Because the City's appeal of the IDOT's ruling is still pending, this claim is not ripe.  *See **Missourians for Fiscal Accountability v. Klahr***, No. 15-2172, 2016 WL 4056057 (8th Cir. July 29, 2016) (explaining that ripeness prevents "judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties") (citation omitted). The status of the IDOT ruling is central to a claim based on it.  The district court should dismiss without prejudice the drivers' state-law claims based on the alleged violation of IDOT rules.  *See **Idris***, 552 F.3d at 567 (dismissing without prejudice plaintiffs' state law claim that a Chicago ATE ordinance is in conflict with a state statute).

V.

The drivers believe the City and Gatso have been unjustly enriched.  An unjust enrichment claim requires: "(1)  defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances."  ***State ex rel. Palmer v. Unisys Corp.***, 637 N.W.2d 142, 154-55 (Iowa 2001).  The drivers think that Gatso was unjustly enriched by an unlawful delegation of police power from the City.  The drivers' only authority, *Spurbeck v. Statton*, 106 N.W.2d 660, 665-66 (Iowa 1960), is inapposite because the statute there did not improperly delegate police power.  A municipality "can . . . delegate its right to perform certain acts and duties necessary to transact and carry out its powers. These delegable acts typically involve functions that require little judgment or discretion."  ***Warren Cty. Bd. of Health v. Warren Cty. Bd. of Supervisors***, 654 N.W.2d 910, 913-14 (Iowa 2002).  Subject to later development of the law, the Iowa Supreme Court has allowed ATE systems to operate

-13-

with private contractors, thus implicitly rejecting the delegation challenge. *See **City of Sioux City v. Jacobsma***, 862 N.W.2d 335, 337 (Iowa 2015) (allowing Sioux City to operate an ATE system with a private contract). *Cf.* ***City of Davenport v. Seymour***, 755 N.W.2d 533, 544 (Iowa 2008) (recognizing that "a number of statutory and constitutional questions have been raised to ATE ordinances that are not presented in this appeal," including whether they "improperly delegat[e] government authority to a private vendor.").

The drivers also argue that the ordinance violates Iowa Code § 602.6101, again as an improper delegation of police power, by making Gatso a court.[2] Section 602.6101 establishes the jurisdiction of the Iowa District Court as "exclusive, general, and original jurisdiction of all actions . . . except in cases where exclusive or concurrent jurisdiction is conferred upon some other court, tribunal, or administrative body." The drivers' argument fails for the same reason as their claim for unjust enrichment; there is no improper delegation (or in statutory terms, conferral) of power upon Gatso. *See **Jacobsma***, 862 N.W.2d at 337. *Cf.* ***Seymour***, 755 N.W.2d at 544.

VI.

The drivers object that the district court considered matters outside of the pleadings, effectively converting a motion to dismiss into a motion for summary judgment. **Fed. R. Civ. P. 12(d)** ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). District courts may consider "those materials that are necessarily embraced by the pleadings." ***Schriener v. Quicken Loans, Inc.***, 774 F.3d 442, 444 (8th Cir. 2014). Those materials include "documents whose contents are alleged in a complaint and whose

---

[2]The drivers did not plead a violation of Iowa Code § 364.22.

-14-

authenticity no party questions, but which are not physically attached to the pleadings." ***Kushner v. Beverly Enters., Inc.***, 317 F.3d 820 (8th Cir. 2003).  Courts may look outside the pleadings to determine jurisdiction.  *See **Osborn v. United States***, 918 F.3d 724, 728 n.4 (8th Cir. 1990).

The drivers list three items outside the pleadings: 1) checks and payment receipts for the drivers' various citations, 2) a letter from a City police officer dismissing Susan M. Dumbaugh's citation, and 3) a certified statement from a City police captain verifying drivers' citation documents.  The drivers do not dispute that the first two items were used to resolve jurisdictional questions, which means that the district court could consider them.  *See **Osborn***, 918 F.3d at 728 n.4.  As for the third item, the district court did not rely on the certified statement.

According to the drivers, the district court made some findings that rejected their allegations or failed to draw all reasonable inferences in their favor.  First, while the district court did find that the City (not Gatso) mails the Notices of Violation, the drivers do not articulate the materiality of this mistake.  ***Cont'l Holdings, Inc. v. Crown Holdings Inc.***, 672 F.3d 567, 575 (8th Cir. 2012) ("A district court's ruling should be reversed if the error affects the substantial rights of a party.").  Second, contrary to the drivers' view, the district court properly found that the ordinance provides two ways to contest the Notice of Violation—a legal conclusion based on the plain text of the ordinance.

\* \* \* \* \* \* \* \*

The judgment is affirmed in part and reversed in part.  Hughes and Mazgaj's claims are remanded for remand to state court.  The drivers' state law claims based on IDOT standards are remanded for dismissal without prejudice.  The judgment is otherwise affirmed, and the case remanded.

_____

-15-