MANSFIELD, Justice (concurring in part and dissenting in part).
I respectfully concur in part and dissent in part.
I concur in part III of the court's opinion.
I dissent from part IV because I would affirm dismissal of plaintiffs' equal protection and substantive due process claims.
I concur as to the result in part V. I have stated my views on the unlawful delegation issue in my concurrence in part and dissent in part in Behm v. City of Cedar Rapids , 922 N.W.2d 524, ---- (Iowa 2019).
I dissent from part VI because my analysis under parts III and IV leads me to the conclusion that there is no viable constitutional claim in the case.
I concur as to the result in part VII.A. I incorporate by reference what I said in Behm , 922 N.W.2d at ----, on the subject of state law preemption.
I concur as to parts VII.B, VIII, and IX.
In the following discussion, I will elaborate on my disagreement with part IV of the majority opinion. I will also explain why there may be serious obstacles to a potential claim that the City violated its original ordinance by implementing an unauthorized administrative process.
I. The District Court Correctly Dismissed the Equal Protection, Substantive Due Process, and "Privileges and Immunities" Claims.
I would affirm the dismissal of the equal protection, substantive due process, and "privileges and immunities" claims brought under the Iowa Constitution. I do not agree that merely alleging a violation of article I, section 6 or article I, section 9 of the Iowa Constitution makes a lawsuit impervious to a motion to dismiss and guarantees a ticket to the discovery phase of litigation. This case provides a good illustration of when a motion to dismiss can be granted. See Hughes v. City of Cedar Rapids , 840 F.3d 987, 996-97 (8th Cir. 2016) (affirming dismissal of federal equal protection and substantive due process claims and noting that "[t]he [ATE] ordinance passes rational basis" and does not "shock[ ] the conscience").
A. The Equal Protection Claim Was Properly Dismissed. Here, the City moved to dismiss plaintiffs' allegation that it violated equal protection for the City to use an ATE system that captured most speeding vehicles but excluded semi-trailer trucks lacking visible rear license plates and government-owned vehicles that were not in the Nlets database.
In their resistance, plaintiffs did not dispute the City's contention that its enforcement mechanism was rationally related "to the state interest in providing a cost effective means to control speed." (Emphasis added.) Plaintiffs simply argued that if safety were the only concern, covering even more vehicles would promote that interest in safety. As plaintiffs put it, "All Vehicle Owners ... are ... similarly situated for safety purposes."
*223 That's not enough. I agree that Racing Association of Central Iowa v. Fitzgerald ( RACI II ), opens the door for plaintiffs on a rational basis challenge to show that the asserted grounds for the legislative distinction have no "basis in fact"-not in the sense that they are merely factually incorrect, but in the sense that they are so off the mark that the legislature could not have "rationally believed" them. See 675 N.W.2d 1, 7-16 (Iowa 2004). Plaintiffs' burden "includes the task of negating every reasonable basis that might support the disparate treatment." Id . at 8. "[T]he fit between the means chosen by the legislature and its objective need only be rational, not perfect." LSCP, LLLP v. Kay-Decker , 861 N.W.2d 846, 859 (Iowa 2015). "The burden is not on the government to justify its action, but for the plaintiff to rebut a presumption of constitutionality." McQuistion v. City of Clinton , 872 N.W.2d 817, 831 (Iowa 2015).
Here, plaintiffs, when confronted with the City's motion to dismiss, showed no interest in taking on that burden. They didn't assert that the City's position regarding cost was irrational or that cost was not a legitimate concern. See LSCP , 861 N.W.2d at 861 ("Although in the process of rational basis review we do not simply accept claimed legitimacy of the interests (the ends) legislation purports to advance, LSCP does not contest the legitimacy of the interests expressly profferred by the Department in this case."); see also Hearst Corp. v. Iowa Dep't of Revenue , 461 N.W.2d 295, 306 (Iowa 1990) (noting that the state has a a legitimate interest in "administrative economy"). Under the rational basis test, a classification can be underinclusive so long as it is not "extremely" so. LSCP, 861 N.W.2d at 861 ; RACI II , 675 N.W.2d at 10. We can and should affirm dismissal of an equal protection claim where the governmental entity has asserted a legitimate reason for the classification and plaintiffs have not disputed that reason, let alone asked for the opportunity to disprove it.[6]
B. The Substantive Due Process Claim Was Properly Dismissed. I turn now to substantive due process. Plaintiffs argued below that the City had deployed the ATE systems in violation of Iowa Department of Transportation regulations and that doing so "offend[ed] judicial notions of fairness and human dignity." This argument can be quickly dispatched because we have elsewhere concluded that the IDOT regulations in question were not validly promulgated. See City of Des Moines v. Iowa Dep't of Transp. , 911 N.W.2d 431, 450 (Iowa 2018). In any event, a city's mere violation of state law does not establish a *224 substantive due process violation. See Hughes v. City of Cedar Rapids , 112 F.Supp.3d 817, 846 (N.D. Iowa 2015) ("Plaintiffs provide no authority for the proposition that noncompliance with state regulations implicates the Due Process Clause, and the court is aware of none."), aff'd in part, rev'd in part on other grounds , 840 F.3d 987 ; see also Williams v. Nix , 1 F.3d 712, 717 (8th Cir. 1993) ("It is clear ... that, without more, the mere violation of a state law or rule does not constitute a federal due process violation."). If that were the case, every violation of law by a municipality would balloon into a constitutional violation. I would affirm this dismissal as well.[7]
C. The "Privileges and Immunities" Claim Was Properly Dismissed. There is no reason to revive this claim, either. It is unclear what plaintiffs are even claiming. Although the City does provide different types of administrative hearings for out-of-state and in-state residents, plaintiffs are not complaining about that. Apparently their complaint is that the City's ATE systems discriminate against people from outside the City who are less familiar with these "speed traps." This argument presumes that the right to travel embraces the right to speed and is not supported by any relevant legal authority. Any speed trap, whether automated or human-operated, is going to fall more heavily on those who aren't familiar with it. I would affirm the dismissal of this claim.[8]
II. There May Be Serious Obstacles to a Claim That the City Violated Its Own Ordinance.
I agree with the majority that the City appears to have violated its original ATE ordinance. It implemented an off-the-books administrative process that the ordinance doesn't provide for at all. I therefore join in the majority's footnote 3 which suggests the possibility that the district court on remand might consider a possible motion to amend the pleadings to raise a claim for violation of the ordinance. However, I write separately to note two potential obstacles to such a claim. There may be others.
The ordinance has since been amended in July 2017 to authorize an administrative process. Therefore, I question whether either Reuven Weizberg or David Veng-Pedersen can pursue claims for relief under the old ordinance. They never paid their citations. Lacking damages, they would be seeking only injunctive and declaratory relief based on an ordinance that has since been amended. That sounds moot to me. See, e.g., Iowa Bankers Ass'n v. Iowa Credit Union Dep't , 335 N.W.2d 439, 442 (Iowa 1983) (finding a challenge to administrative rules moot where the challenged rules had been rescinded). In my view, Weizberg and Veng-Pedersen should be dismissed from the litigation. At a minimum, I believe the City can raise mootness as a defense.
*225 Jacob Dagel is in a different position. He went through an administrative hearing before the ordinance was changed and paid his citation. Potentially, he and others like him could pursue damages claims for recovery of their fines based on the City's failure to comply with its own ordinance.
Yet, the City may be able to demonstrate that someone like Dagel who paid the citation after an unauthorized administrative process nonetheless committed the traffic violation and therefore suffered no recoverable damages. This may qualify as a defense to a damages claim.
III. Conclusion.
For the foregoing reasons, I concur in part and dissent in part.
Waterman, J., joins this concurrence in part and dissent in part.

In their appellate briefing, plaintiffs generally stick exclusively to the theme that safety is not served by the challenged classification. See Appellees/Cross-Appellants' Br. at 61-64; Appellees/Cross-Appellants' Reply Br. at 18-22. For example, their opening brief heading reads, "Equal Protection Rights Are Violated Where the Purpose of the Ordinance is Safety and the Classifications of Vehicle Owners Are Not Related to that Purpose." Appellees/Cross-Appellants' Br. at 61.
In a small portion of their appellate briefing, plaintiffs do acknowledge the City's cost argument, but only to assert that Gatso bears the cost of operating the ATE system and "therefore any increased cost" of a more comprehensive system would also be Gatso's responsibility. Appellees/Cross-Appellants' Br. at 62. This argument, raised for the first time on appeal, is a nonsequitur. As plaintiffs point out elsewhere in their brief, Gatso has a "contingency" arrangement under which it receives $25.00 to $27.00 per paid citation, with the remaining revenue going to the City. Id . at 15, 24. Plaintiffs thus ignore the fact that Gatso does charge the City for operating the ATE system, in the form of an offset against the City's revenue. Presumably, if Gatso's costs increased, the offset would be greater. In any event, plaintiffs have demonstrated no interest in proving otherwise.

The majority treats plaintiffs' substantive due process argument as if it were a general attack on camera placement independent of the IDOT regulations. It is not. Both here and below, plaintiffs have made it clear that if a fundamental right is not involved, their substantive due process are predicated on the City's violation of IDOT regulations, a matter we have already addressed in the City of Des Moines case. See Appellees/Cross-Appellants' Br. at 64; Appellees/Cross-Appellants' Reply Br. at 24-25.

Plaintiffs' references to the "privileges and immunities" clause of the Iowa Constitution are to the second clause of Article I, section 6, which is nowadays generally regarded as an equal protection guarantee and is also the basis of plaintiffs' equal protection claim. See Edward M. Mansfield & Conner L. Wasson, Exploring the Original Meaning of Article I, Section 6 of the Iowa Constitution , 66 Drake L. Rev. 147, 148 (2018).